## THE STATE v. JOHN LONG, Appellant.

### Division Two, February 18, 1908.

1. **INDICTMENT: Indorsement of Witnesses.** Where no motion to quash the indictment was made because of a failure to indorse the names of witnesses thereon, and no objection to such failure is made until after final judgment, the objection comes too late.

2. **VENUE: Accomplice: Then and There: Margin.** Where the indictment clearly lays the venue as in Wright county in charging the defendant's brother with the homicide, and then proceeds to charge defendant as "then and there" aiding and abetting in said murder, it sufficiently charges the venue as to defendant; and the venue is also established by the margin of the indictment as to both offenses.

3. **INDICTMENT: Principal and Accomplice: Sufficiency.** The indictment in this case, charging the defendant's brother with

murder and defendant as assisting and abetting him in the murder, is sufficient both in form and substance, and avoids the point upon which error was predicated in State v. Burns, 99 Mo. 471.

4. CHANGE OF VENUE: Failure of Judge to Appear.  Where the regular judge is disqualified, and calls in another judge to try the cause, he has authority, upon the failure of such other judge to appear, to call in some other circuit judge to try the case, and it is only on the failure of this second judge called in to appear that the statute requires a change of venue.

5. ————: No Exceptions.  Where no exceptions were taken and saved in the circuit court to the calling in of the judge who tried the cause and to the overruling of defendant's application for a change of venue, the question of the jurisdiction of the trial judge to try the cause is not before the Supreme Court for review.

6. DEFENDANT'S PRESENCE AT TRIAL: Steps in Trial.  The disqualification of the regular judge of himself and the calling in of another judge to try the case, and the adjournment of the court by the sheriff upon the failure of such judge to appear, and the filing of defendant's application for a change of venue and the overruling of the same, are not steps in or part of the trial.

7. ————: ————: Appearance at Arraignment, Etc.  If defendant was present in person at his arraignment, and announced ready for trial, and selected the jury and offered a demurrer to the evidence, he will, under the statute, on appeal, be presumed to have been present during the whole of the trial.

8. ————: ————: Continuance.  An application for a continuance is no part of the trial.

9. ————: ————: Motion for New Trial.  A failure of the record to show defendant's presence at the filing, hearing and overruling of his motions for a new trial and in arrest, is not error.

10. EVIDENCE: Objections: Incompetent: Leading Questions, Etc.  The overruling of objections made after the witness had testified, or that the evidence is incompetent, irrelevant and immaterial, or that the questions are leading, is not error.

11. ————: Clothing of Deceased.  It is not error to admit the clothing of deceased, to show where the stabs were inflicted.

12. ————: Could Have Seen.  Where the witnesses were on the ground, saw the encounter between deceased and defendant's brother, and testified that defendant took no part in it, it is not reversible error to exclude evidence that they could have seen defendant if he had taken part in the struggle.  While the question was proper, it is obvious that affirmative answers could

State v. Long.

have added nothing to their testimony, and that no harm resulted to defendant by excluding their answers.

13. ————: Hearsay: Res Gestae. It is proper to exclude as hearsay the answer of a witness who came out of the church after the difficulty was over and deceased was dead, who was asked, "Was anything said there over the body about anybody having hit deceased except defendant's brother, at any time there at the body?"

14. ————: What Occurred After Difficulty. Testimony as to what was said and done after the difficulty was over, unless confined to the actual participants, should be excluded.

15. PRACTICE: Closing Argument for State. Unless the action of the court in permitting an attorney other than the prosecuting attorney to make the closing argument for the State, is assigned as error in the motion for new trial, it cannot be reviewed on appeal.

16. INSTRUCTIONS: No Assignment. Where error in the giving of instructions on the part of the State is not assigned in the motion for a new trial, they are not for review on appeal.

17. ————: Refusing Defendant's. Where the instructions given cover every phase of the case, it is not error to refuse those asked by defendant.

18. SUFFICIENCY OF EVIDENCE. . Where the evidence on every material point in the case was in hopeless conflict, but that for the State, if true, was sufficient to sustain the verdict, the Supreme Court will not interfere.

Appeal from Wright Circuit Court.—*Hon. Wm. H. Martin,* Special Judge.

AFFIRMED.

*W. S. Pope* for appellant.

(1)    Sections 2594, 2595, 2597, Revised Statutes 1899, prescribe the causes for a change of venue on account of the prejudice of the judge and the calling in of another judge to try the case; but it is provided in section 2597, "Should said judge so requested fail to appear and hold the court at the time appointed for the trial of said cause, the judge of the court shall or-

der a change of venue in said cause to some other circuit." Under the circumstances developed by the record in this case it should have been sent to another circuit.   (2)  Section 2610 provides only for the receiving of a verdict in the absence of the defendant, when such absence on his part is wilful or voluntary, and such absence must appear from the record.  State v. Smith, 90 Mo. 37; State v. Hope, 100 Mo. 347.  The statute provides that if "present at  the  commencement or any other stage of the trial, it shall be presumed in the absence of all evidence in the record to the contrary, that he was present during the whole trial."  This does not cover the returning of the verdict into court or the hearing of the motions for a new trial and in arrest. Whether defendant was on bail or in custody during the trial, he was in custody after the verdict was rendered.  The law infers this much.  State v. Charles, 105 S. W. 609; State v. McClain, 156 Mo. 101.  And we find him in the custody of the sheriff when he is brought before the court for sentence.  The record shows that the motions for a new trial and in arrest were filed and overruled immediately, without argument, and in the absence of defendant.  Upon the face of the record it appears that defendant has been denied rights given him by the law and guaranteed to him by the Constitution, and for this reason this case should be reversed.

*Herbert S. Hadley,* Attorney-General, and *N. T. Gentry,* Assistant Attorney-General, for the State.

(1)   The indictment in this case is sufficient in form and substance, and follows the approved forms. Kelley's Crim. Law, sec. 474.   (2)   A party can not sit by and allow an improper question to be answered and accept of the benefit if the answer is favorable, but object to it if the answer is not favorable.  State v. Sykes, 191 Mo. 79; State v. Marcks, 140 Mo. 656;

State v. Harris, 199 Mo. 716; 1 Thompson on Trials, secs. 715-716. (3) Objections were made that the evidence was irrelevant, immaterial, etc. But this court has said that such an objection amounts to no objection at all. State v. McLaughlin, 149 Mo. 27; State v. Young, 153 Mo. 449. (4) Defendant's counsel also objected to the asking of certain questions because the same were leading; but the asking of such questions is a matter within the discretion of the trial court. State v. Bateman, 198 Mo. 222; State v. Woodward, 191 Mo. 632; State v. Whalen, 148 Mo. 290; 1 Wigmore on Evidence, secs. 769-70. (5) It has often been held proper in homicide cases to introduce in evidence the coat, shirt or other clothes worn by the deceased; also bones of the deceased. State v. Wieners, 66 Mo. 29; 4 Elliott on Evidence, sec. 3028; 2 Wigmore on Evidence, sec. 1157; Underhill on Crim. Evid., sec. 48; State v. Goddard, 146 Mo. 184; Wharton on Homicide (2 Ed.), sec. 674; Hart v. State, 15 Tex. App. 230; State v. Miles, 199 Mo. 546; State v. Reed, 137 Mo. 134; State v. Thornhill, 177 Mo. 696; State v. Linney, 52 Mo. 41; 1 Thompson on Trials, sec. 344. (6) At the close of all the evidence counsel for defendant filed a motion objecting to any attorney, other than the prosecuting attorney, making the closing argument, and asking the court to require the prosecuting attorney to make the closing argument. This motion was overruled, and defendant saved his exceptions. Even if we concede that this was error, which we do not, it may be said that the record does not show what attorney closed the argument; and still further, counsel for defendant failed to assign this alleged error in the motion for a new trial. The error, if error was committed, can not be considered by this court. (7) The State's instructions were fair and full, and correctly stated the law to the jury. But, if erroneous, they can not be considered, as defendant's counsel failed to assign the giving

of illegal instructions as one of the grounds for a new trial. State v. Kaiser, 124 Mo. 664; State v. Nelson, 101 Mo. 480. (8) Defendant's refused instructions were properly refused, as the first one contained a theory wholly adverse to that of the defense. Defendant can not occupy the position that he did not do several acts, and, at the same time, have the jury instructed on the theory that he did do those very acts. State v. Valle, 196 Mo. 29; State v. Bailey, 190 Mo. 295; State v. Lewis, 118 Mo. 83; State v. Gartrell, 171 Mo. 522. The parts of said instruction that were proper had already been included in instructions 2, 3 and 6, given at the request of the State. It is not error to refuse an instruction when one covering the same subject has already been given. State v. Nelson, 166 Mo. 207; State v. Bradford, 156 Mo. 98. (9) Where there is substantial evidence tending to show that the defendant is guilty, this court will not attempt to weigh the same, but will defer to the finding of the jury, as approved by the trial court. State v. Smith, 190 Mo. 706; State v. Payne, 194 Mo. 442; State v. Groves, 194 Mo. 452; State v. Williams, 186 Mo. 128; State v. Williams, 149 Mo. 496; State v. Swisher, 186 Mo. 8.

GANTT, J.—At the March term, 1905, the grand jury of Wright county returned an indictment against Rankin Long and John Long, the defendant herein, charging that the said Rankin Long on the 9th day of March, 1905, at the county of Wright, State of Missouri, feloniously, willfully, deliberately, premeditatedly, on purpose and of his malice aforethought did make an assault in and upon one Joseph Buttram, and with a certain deadly weapon, to-wit, a certain knife, which he the said Rankin Long in his right hand then and there had and held, the said Joseph Buttram feloniously, willfully, deliberately, premeditatedly on purpose and of his malice aforethought, did strike, stab

and thrust in and upon the left side of the body giving to the said Joseph Buttram then and there with the knife aforesaid in and upon the left side of the body of him the said Joseph Buttram one mortal wound of the length of one inch and of the breadth of one inch and of the depth of five inches, of 'which said mortal wound, the said Joseph Buttram did on the 9th day of March, 1905, at the county of Wright and State aforesaid of the mortal wound aforesaid instantly die. And the jurors aforesaid upon their oath aforesaid do further charge and present that one John Long then and there feloniously, willfully, deliberately, premeditatedly and of his malice aforethought was present, aiding, helping, abetting, assisting, comforting and maintaining the said Rankin Long the felony and murder aforesaid in manner and form aforesaid to do and commit.

A severance was granted, and it seems that Rankin Long was tried and convicted of murder in the second degree. After several continuances, Judge Argus Cox, the regular judge of said circuit, disqualified himself on the record, and the prosecuting attorney and the defendant not being able to agree upon some attorney to sit as special judge, Judge Cox requested Judge J. L. Fort, the judge of the twenty-second Judicial Circuit, to try the cause, and set the cause down for April 23, 1906, for hearing. On April 23, 1906, Judge Fort being unable to be present and hold the court, the cause was continued until July 2, 1906. On July 2nd, Judge Fort again failing to appear, Judge Cox requested Judge William H. Martin of the fourteenth Judicial Circuit to try the case, and the cause was set down for July 2nd, and on that date the cause was reset for the 2nd Monday in September, 1906. On this last-mentioned date, the court met pursuant to adjournment, and Judge Martin appeared and proceeded to preside in the cause and the defendant filed an application for

continuance, which was overruled, but the court reset the cause for October 10, 1906, to enable the defendant to secure his absent witnesses.    On October 10, 1906, the court met pursuant to adjournment, Judge Martin present, and the defendant appeared in person and was arraigned and entered his plea of not guilty.    And on the next day, October 11th, the record recites:

"State of Missouri v. John Long.

"Now comes the prosecuting attorney, who prosecutes the pleas of the State in its behalf, and also comes the defendant in person and by his attorneys, and both announce ready for trial."

Thereupon the jury was impanelled and sworn as the law directs, and after hearing the evidence offered by the State, the defendant by his attorneys filed his demurrer to the evidence, which was overruled, and on the next day, the record proceeds, the defendant by his attorneys filed his motion to require the prosecuting attorney to close the argument in the case, which motion was overruled.    The record proceeds then to state: "And the jury after hearing all the evidence offered by the State and the defendant, instructions of the court, and argument of the counsel, doth retire to consider their verdict."    And on the next day, the record recites:  "Now on this day comes the jury in open court and return the following verdict:  'We the jury find the defendant guilty of manslaughter in the fourth degree, and assess his punishment at imprisonment in the penitentiary for a period of two years.  J. H. Pool, Foreman.' "    And afterwards within four days, the defendant by his attorneys filed his motions for new trial and in arrest of judgment, which were taken up and overruled, and the defendant sentenced to the penitentiary for a term of two years.    From that sentence he was granted an appeal to this court.

The State's evidence tended to show that on the 9th of March, 1905, a meeting of the Temperance

League was held in the Baptist Church about one half mile west of the town of Grove Springs in Wright county, and a large number of people were in attendance that night. The defendant is an elder brother of Rankin Long, and both lived with their parents a mile or so on the other side of Grove Springs from the said church. Between sun-down and dark on that afternoon, Porter Henderson saw the defendant, his brother Rankin and the two Clymer boys meet in front of a store in Grove Springs; they mounted their horses and started as if they were going home, suddenly they stopped, held a consultation, and turned their horses around and started in the direction of the church where the meeting was held. Joseph Buttram, the deceased, was twenty-two years old, unmarried and lived with his parents on a farm near Grove Springs, and on that night went in company with his younger brothers and sisters to this temperance meeting. He occupied a seat near the front of the church on the south side and close to a window. Twice during the evening he got up and went out, returning each time and taking his former seat. During the evening he borrowed a knife from Frank Weaver and whittled a pine stick. Just before the close of the services, the defendant came into the church, entering at the front door, walked down the aisle and to the place where the deceased was sitting and whispered something to the deceased, who immediately got up, gave the knife to Frank Weaver and walked out in company with defendant. When they reached the front door, the defendant put his arm around the neck of the deceased and hurriedly walked towards a place some ten feet distant, where two others were standing in the darkness; in a moment one of the others began striking at the deceased, and the defendant struck the deceased with his fist on the right side of the head and neck, some of the witnesses saying once and others twice. Rankin Long was then rec-

ognized as one of those engaged in the assault on the deceased, and he was seen to draw a knife and stab the deceased twice. The deceased staggered back a few steps toward the church door and fell on the ground and died in a few moments. During the time that defendant's brother was striking at the deceased, defendant was heard by several witnesses to say, ''Stay with him, Rankin, G—d— him, stay with him.' Immediately after the deceased had fallen, the defendant said· ''Me and the kid always stays with him.'' As the deceased fell, he cried out, ''Take him off boys, take him off.'' A crowd gathered around and the defendant and his brother disappeared. Several of the witnesses testify that the killing occurred at nine o'clock. Between nine and ten o'clock that night, Porter Henderson, who was still in Grove Springs, recognized the defendant and his brother riding from the west at full speed coming from the direction of the church and going towards their home. They did not slacken their speed even on the rough places. The body of the deceased was carried into the church and a message sent to his parents. In the course of a few hours, his wounds were examined; one wound was made by a small knife under the left arm and was not very serious, the other one was in the left breast just below the left nipple and penetrated the heart. There were dark bruises on the right side of the head and neck of the deceased.

The defendant's evidence tended to show that he was in the Baptist church the night of the difficulty and occupied a seat near the door and did not move from his seat until after the benediction had been pronounced and did not go into the churchyard until after his brother Rankin Long and the deceased had had their difficulty; that he then went up to Rankin and said to him: ''You must cut out that fight or you boys will be pulled for it.'' His evidence tended further to show that there had been a bad feeling between Rankin

Long and the deceased, and the deceased had made threats against Rankin; that the deceased looked at Rankin twice, made a face at him and gritted his teeth at him, and that after the deceased and Rankin went out into the yard, deceased was the aggressor and attempted to draw a knife. Defendant also introduced evidence tending to show that deceased had no bruises on his head or neck and that there was no arrangement between defendant and his brother to assault and injure the deceased. He also introduced evidence tending to show that his general reputation prior to this difficulty was good.

In rebuttal the State offered witnesses who testified that Houston Clymer, one of the defendant's witnesses, stated to various parties that he was in the church at the time of the killing and knew nothing of the difficulty until it was over. The State also offered evidence to show that the deceased did not grit his teeth or make any faces at Rankin Long in the church that night either as he passed out or while he was seated in the pew.

I. The grounds upon which the defendant seeks a reversal of the judgment will be noted in the order of defendant's brief.

The indictment is assailed for not properly charging the defendant with the killing of Joseph Buttram and not properly charging the venue as to the defendant and in not having the names of the witnesses endorsed thereon.

Treating of these in their inverse order, it is sufficient to say that no motion to quash was made on account of the failure to endorse the names of the witnesses on the indictment, and it is too late after final judgment to raise this objection. Clearly the attention of the circuit court was never called to it at any stage of the proceedings in that court. Moreover, ten of the

witnesses were endorsed on the indictment when it was returned by the grand jury.

As to the venue of the defendant's offense, the venue as to Rankin Long was laid at the county of Wright in the State of Missouri, and having charged that Rankin Long at said county and State on the 9th of March, 1905, did feloniously, willfully, deliberately, premeditatedly on purpose and of his malice aforethought stab said Joseph Buttram with a deadly weapon, to-wit, a knife, and giving to him one mortal wound, of which he on said day at the county of Wright and State of Missouri instantly died, the indictment proceeds to charge, "And the jurors aforesaid upon their oath aforesaid do further charge and present that John Long *then and there*" did aid and abet the felony and murder to commit; the time and place at which the defendant was present aiding, abetting and assisting in the said homicide, was sufficiently indicated and it was not necessary to repeat Wright county and State of Missouri. Besides, the venue was laid as to both offenses in the margin of the indictment. [Secs. 2527 and 2535, R. S. 1899; State v. Beaucleigh, 92 Mo. 1. c. 496; State v. Dawson, 90 Mo. 149.]

The indictment was sufficient both in form and substance in charging the defendant and his brother with the murder of Joseph Buttram. A less specific charge was upheld in State v. Burns, 99 Mo. 471. The pleader in this case has avoided the point upon which error was predicated in that case and followed the approved form set out in Kelley's Crim. Law and Practice, section 471.

II. The jurisdiction of Judge Martin to preside in the cause is challenged for the first time in this court. The claim is now made that the cause should have been sent to another circuit. No exceptions were taken or saved to the calling in of Judge Martin to try the cause, either at the time that he was called or at any time

during the proceedings in the circuit court. On May 3rd, there is an entry of record to the effect that an application for change of venue theretofore filed by the defendant, was by the court overruled, but defendant in his bill of exceptions has not incorporated his said application and we are not advised as to the ground thereof. The record does disclose that on March 3, 1906, and before the filing of the said application by the defendant, the regular judge of the court, Argus Cox, had recited upon his record that he was incompetent to try the cause and made an order calling upon Judge Fort to try the same and named the day for Judge Fort to appear and preside in the case. As already said, Judge Fort failed to appear at the first setting of the cause, and again when it was reset for him, and it was then that Judge Cox called upon Judge Martin to preside in the case. The contention of the learned counsel for the defendant is that upon the failure of Judge Fort to appear and try the cause, the statute was mandatory that Judge Cox should order a change of venue to some other circuit. Section 2597, upon which this claim of counsel is based, provides: ''That if the regular judge shall be incompetent to sit for any of the causes mentioned in section 2594 . . . . the regular judge shall set the cause down for trial on some day of the term or some day as early as practicable in vacation, and notify and request the judge of some other circuit to try the cause; and it shall be the duty of the judge so requested to appear and hold the court at the time appointed for the trial of said cause; and he shall, during the trial of the cause, possess all the powers and perform all the duties of a circuit judge, . . . . provided: . . . If the judge so requested shall fail to appear and hold the court at the time appointed for the trial of the cause, the judge of said court shall reset said cause for trial, to suit the convenience of the judge so requested to try said cause, or may notify and re-

quest the judge of some other circuit to appear and try said cause, as heretofore provided.'' Then follows, for the first time, the provision relied upon by the defendant in these words: ''Should said judge so requested fail to appear and hold the court at the time appointed for the trial of said cause, the judge of the court shall order a change of venue in said cause to some other circuit.'' So that it clearly appears that Judge Martin was regularly called by Judge Cox under the provisions of the statute, as the statute evidently gave Judge Cox the right to call in Judge Martin upon the failure of Judge Fort to come, without requiring a change of venue to some other circuit. We have said this much in answer to the contention of counsel in his brief, but in our opinion, no such question is before us for review, inasmuch as no exceptions were taken or saved in the circuit court to the calling in of Judge Martin or to his presiding in the cause.

III. It is next insisted that the record fails to show the presence of the defendant at important steps in the prosecution of the cause. Thus, it is said the record fails to show the presence of the defendant when Judge Cox disqualified himself and called Judge Fort to try the case and set down the trial for April 23, 1906, and also fails to show his presence on April 23, 1906, when the court was adjourned until the 2nd of May, and on the 2nd of May when his attorney filed a motion for a change of venue, and on May 3rd when that application was overruled, and fails to show his presence on October 13, 1906, when the jury returned the verdict; on October 15, 1906, when the motion for new trial was filed and overruled; on October 16th, when motion in arrest was filed and overruled. Section 2610, Revised Statutes 1899, provides: ''No person indicted for a felony can be tried unless he be personally present during the trial. . . . . Provided,

that in all cases the verdict of the jury may be received by the court and entered upon the records thereof in the absence of the defendant, when such absence on his part is willful or voluntary, and when so received and entered shall have the same force and effect as if re ceived and entered in the presence of such defendant; and *provided,* further, that when the record in the appellate court shows the defendant was present at the commencement or any other stage of the trial, it shall be presumed, in the absence of all evidence in the record to the contrary, that he was present during the whole trial." Proceeding by a process of exclusion it suffices to say that the disqualification of himself by Judge Cox and the calling in of Judge Fort to try the case, and the adjournment of the court by the sheriff for failure of Judge Fort to appear and the filing of defendant's application for a change of venue and the overruling of the same, were not steps in or part of the trial. This court, in State v. Smith, 90 Mo. 37, adopted the view of this provision which had been taken by the Supreme Court of the United States in Hopt v. People, 110 U. S. 574, in which it was announced that, "For every purpose involved in the requirement that the defendant shall be personally present where the indictment is for a felony, *the trial* commences at least from the time when the work of impanelling the jury begins." In State v. Barrington, 198 Mo. l. c. 90, 91, it was ruled that the order of the court to summon a *venire* from which to obtain a panel of forty qualified jurors, in the absence of the defendant, was not a violation of his right to be present during the trial, but was an administrative act preparatory to the trial. Recurring to the record proper, it affirmatively shows defendant was present in court on July 2, 1906, when the record shows Judge Fort's failure to appear and the order calling Judge Martin, and fixing the second Monday in September for the trial, and no objection was

made or exception saved by defendant.  On the second Monday in September, defendant by his attorneys applied for a continuance which was denied in part but granted to the second Monday in October, 1906.  On the second Monday in October, defendant was present in person and arraigned and pleaded not guilty.  The record shows that on the next day he appeared in person, announced ready for trial, selected the jury, and at the close of the State's case filed a demurrer to the evidence, which was overruled and the cause was submitted to the jury, and on the next day they returned their verdict.  This brings this case squarely within the last proviso of section 2610.  There is not a syllable of evidence showing that the defendant was not in fact present when the verdict was rendered.  [State v. Neighbors, 179 Mo. 351; State v. Lewis, 69 Mo. 92; State v. Yerger, 86 Mo. 33; State v. Brock, 186 Mo. l. c. 461 and 462.]

As to the failure to show the presence of the defendant when his motions for new trial and in arrest were overruled, he made no request to be present, if in fact he was not, and it has been ruled that an application for a continuance and its consideration was no part of the trial.  [State v. Hall, 189 Mo. l. c. 264-5.] Likewise the failure to show his presence at the filing, hearing and overruling of motions for new trial and in arrest, was not error.  [State v. Brown, 63 Mo. 439; State v. Hoffman, 78 Mo. l. c. 258; State v. Lewis, 80 Mo. l. c. 112; State v. Elkins, 63 Mo. l. c. 163.]  Accordingly, this assignment must be ruled against the defendant.

IV.  As to the admission of testimony in behalf of the State over the objections of the defendant, no point is made in brief of his counsel, but we have examined the record and find that the objections were made either after the witness had testified or because the testimony was irrelevant, incompetent and immaterial,

or that the questions were leading, and there was no error in admitting the evidence. [State v. Sykes, 191 Mo. l. c. 79; State v. McLaughlin, 149 Mo. l. c. 27; State v. Bateman, 198 Mo. l. c. 222.]

As to the objection to the testimony of Wm. Scrivener, in rebuttal, that the deceased bore a good reputation as a peaceable, law-abiding citizen, "for the reason that his good reputation is conceded," it is obvious no harm could have resulted to defendant. As to the admission of the clothing of deceased to show where the stabs were inflicted, there was no error. [State v. Wieners, 66 Mo. l. c. 29; Wigmore on Ev., sec. 1157; State v. Miles, 199 Mo. l. c. 546.]

V. The exclusion of testimony offered by defendant. Everett Randolph, a witness for defendant, testified, that he saw deceased and Rankin Long go out of the church together. He followed close behind them. He heard Rankin say he would go no farther and then saw deceased strike Rankin and then heard the licks. Asked if defendant John Long was present, he said he saw him just after he got out of the church; that he stepped up to the side of the witness; that defendant, John, took no part in the encounter. Asked if John Long had taken a part in it he could have seen him, he said, "Yes, sir, I could." To this an objection was made by the State, as incompetent, whereupon the court said: "Let the witness tell where this was and what he did see and let the jury infer what he could have seen; the objection is sustained." Exception saved. Thereupon the witness testified, that defendant did not come out of the church until after witness did; that neither witness nor defendant came out until after the benediction had been pronounced; that deceased and Rankin preceded them two or three minutes and he followed them and saw the encounter. While the question was proper, it is obvious no harm resulted to defendant, as the witness placed himself right on the

scene and testified positively that defendant was at his side and took no part in the struggle. A like objection was made to the question to Gilbert Randolph and his testimony was to the same effect. He came out of the church with defendant and defendant took no part in the difficulty and it must be held the exclusion of his answer as to what he might have seen could not have injured defendant. A similar question was propounded to Ova Scrivener, a witness for defendant, and was sustained by the court, but the witness testified he was standing there and could see deceased and Rankin Long engaged in the difficulty and did not see defendant John Long there at all and saw no one hit deceased but Rankin Long and saw no one else take part in the difficulty and he could plainly see deceased and Rankin Long engaged in the difficulty, he stood about 12 or 15 feet from them, it was light enough for him to see plainly the persons fighting. Obviously, an answer that he could have seen any other person would have added nothing to his testimony on this point and the exclusion of the question was not reversible error. The court expressly ruled that this witness could tell how light it was and whether he could distinguish those parties or not and whether he was looking at them all the time or not and whether he did see anybody else go up there.

Again, when Frank Clymer, a witness for defendant, testified, he did not go out of the church until the difficulty was over; did not see defendant after he left the church, he was asked, "If there was anything said there over the body about anybody having hit Joe Buttram except Rankin Long, at any time there at the body?" To this counsel for the State objected and the objection was sustained and defendant excepted. This ruling was correct. The answer called for hearsay testimony. The difficulty was over. The deceased was dead and the defendant was not present.

Ed Bohannon, for defendant, was asked if defendant John Long had gone up and hit Buttram, the deceased, or had taken him out of the church, whether or not he could have seen him, and he answered that he could and he thought he would have seen him if he had done so. He testified that John Long did not leave his seat during the services. Asked if he knew John Long did not go to deceased and take him out, the question was objected to and sustained, but it is clear it was immaterial, in the light of all his testimony, though we can see no reason for not permitting it. Other testimony as to what was done or said after the meeting closed without confining it to the actors in the difficulty, was excluded and properly so.

VI. The defendant complains that C. A. Newton, an attorney at law other than the prosecuting attorney, was allowed to make the closing argument in the case, but as this was not assigned as error in the motion for new trial, it is not before us for review.

The court instructed the jury on murder in the second degree and manslaughter in the fourth degree; on reasonable doubt and the presumption of innocence, self-defense, and on what constituted aiding, assisting and abetting the killing of the deceased by Rankin Long and what would not constitute the same. As error in the giving of instructions on the part of the State is not assigned in the motion for new trial they are not before us for review.

The defendant requested three instructions. The first was to instruct the jury to find the defendant not guilty. The other two instructions are as follows:

"2. The court instructs the jury that although you may believe from the evidence that the defendant, John Long, took part in the difficulty in which Joe Buttram was stabbed and killed by Rankin Long, yet before the defendant could be convicted of the offense charged in the indictment in this cause, they must find that there

was a common purpose in the minds of Rankin Long and John Long, the defendant herein, to kill said Joe Buttram, and that the stabbing and killing of Joe Buttram by Rankin Long was done in the accomplishment of such common purpose, or that such stabbing and killing of Joe Buttram was done by said Rankin Long in accomplishment of a purpose in the mind of Rankin Long to kill said Joe Buttram, and that the said defendant, John Long, had knowledge of such purpose of said Rankin Long, and that he, defendant, did some act, such as striking deceased or aiding, abetting, counseling, encouraging or commanding the said Rankin Long in the accomplishment of such purpose.

"3. The court instructs the jury that even though they believe from the evidence that the defendant, John Long, engaged or took part in the fight or difficulty in which Joe Buttram was stabbed and killed, yet this fact alone is insufficient to convict the defendant; under the indictment in this case it must further be shown by the evidence, to the satisfaction of the jury, beyond a reasonable doubt, that he, the defendant, with knowledge of the intention of Rankin Long to do said stabbing and killing, aided, abetted, counseled, encouraged, advised or commanded the said Rankin Long to stab and kill said Joe Buttram, and unless this proof has been made, they must find said defendant, John Long, not guilty, although he, said defendant, may have been present, and may have been engaged in the difficulty when the stabbing and killing took place."

A comparison of these instructions number 2 and 3, with those given by the court of its own motion will show that the subject was fully covered by the court's instructions numbered 2, 3 and 6. All that was proper to be said in those instructions had already been said by the court and the failure to repeat it was not error, to say nothing of the inconsistency of the defendant

209 Sup—25

in submitting to the jury an instruction based upon the hypothesis that he was present and taking part in the fight on the night of the homicide after having testified over and over again that he was not engaged in the difficulty in any manner, shape or form, and did not encourage, assist or countenance his brother in the said fight. But in order to hold him guilty the court in each any every one of its instructions required the jury to find that he was present, aiding, abetting and counseling his brother Rankin Long in committing the homicide, and properly left it to the jury to say whether the killing was murder in the second degree or manslaughter in the fourth degree as they should find from the facts in evidence under the instructions of the court. We think there was no error in refusing these instructions on the ground that the court's instructions fully covered every phase of the case.

VII. It remains now only to consider the refusal of the first instruction asked by the defendant, to-wit, an instruction to acquit the defendant under the evidence. The learned counsel for the defendant in this court asked that the defendant be discharged because of no evidence sufficient to convict him. That the evidence presents a hopeless case of conflict must be conceded. If the testimony of the defendant himself and his witnesses is to be believed, he was not guilty of any offence, he did not take part in the difficulty in which young Buttram was stabbed, and did not come out of the church until after the young man had been fatally stabbed. Moreover, he testifies that he did not incite his brother "to stay with the deceased" as testified to by the other witnesses. On the other hand, if the State's witnesses are to be credited, an entirely different case is made. According to that evidence, the defendant and his brother Rankin Long and the two Clymer boys attended the meeting at the church on the night of the homicide together. The circumstances

under which they met after sundown that evening and apparently changed their plans and concluded to go to the church, was a fact to be considered by the jury. Several of the witnesses for the State testified that shortly before the closing of the exercises in the church, the defendant came in from the church yard and walked to where deceased was sitting and stopped and whispered to him, and thereupon the deceased got up and walked out of the church with the defendant; about the time they reached the front door, the defendant put his arms around the neck of the deceased and they walked out to where two other men were standing, a short distance from the church. The majority of the evidence tended to show, both on the part of the State and the defendant, that one of these men was Rankin Long, a brother of the defendant, and almost instantly after the deceased had gotten out there Rankin Long began to strike him and stabbed him twice, from the effects of which wound he died. Other witnesses for the State testified that during the assault by Rankin Long upon the deceased the defendant John Long struck the deceased twice with his fists and called to his brother, "Stay with him, Rankin, G—d—him, stay with him." After the deceased had been fatally wounded and had fallen to the ground, one of the witnesses testified the defendant said, "Me and the kid always stays with him." Immediately after the deceased had fallen, the defendant and his brother hurriedly left the scene of the difficulty and were seen riding their horses at a rapid rate going from the church. If the jury believed the testimony of the State's witnesses, Isaac Connor, Joseph Buttram, Eliza Connor, John Lowry and Jeff Johnson, who testified to these facts, and the verdict indicates that they did believe them, then there can be no doubt that the defendant John Long was present, aiding, abetting and encouraging his brother Rankin Long to stab the deceased, and

that he had been instrumental in bringing the deceased out where Rankin Long stood, so as to afford the latter an opportunity of striking and stabbing the deceased. The motive for this homicide is not disclosed by the State's evidence. On the part of the defendant several of the witnesses testified to a threat on the part of the deceased against Rankin Long to the effect that "he had it in for him," and that during the services the deceased had twice passed down the aisle and looked at Rankin Long, had made a face at him, and gritted his teeth at him, but this evidence as to the action of the deceased in the church was denied by other witnesses who observed him as he came and went up and down the aisle of the church. There was also evidence on the part of the defendant that after the deceased and Rankin went out into the yard, the deceased was the aggressor and attempted to draw a knife, but the evidence for the State tended to contradict this evidence also. There was also evidence tending to show there were no bruises on the neck and head of the deceased, but that was testified to by witnesses for the State, so that it is impossible to reconcile the testimony of the parties to this unfortunate killing. The jury heard all this evidence, saw the witnesses, and it was their peculiar province to weigh and determine the credibility of the testimony. The trial court who heard the testimony and also saw the witnesses refused to disturb the verdict. This court has often ruled that where there is substantial evidence to sustain the verdict this court will not attempt to weigh the same, but will defer to the finding of the jury as approved by the trial judge. [State v. Smith, 190 Mo. 706; State v. Payne, 194 Mo. 442.]

We have patiently gone through all the assignments of error and read the testimony, and in our

opinion there is no reversible error, and the judgment of the circuit court must be and is affirmed.

*Fox, P. J.,* and *Burgess, J.,* concur.