**STATE of Missouri, Respondent,**

v.

**Olin KITCHIN, Appellant.**

No. 45797.

Supreme Court of Missouri,

Division No. 2.

March 11, 1957.

Motion for Rehearing or to Transfer to Court en Banc Denied April 8, 1957.

Olin Kitchin, appellant, pro se.

John M. Dalton, Atty. Gen., Aubrey R. Hammett, Jr., Asst. Atty. Gen., for respondent.

EAGER, Presiding Judge.

The present appeal is from an order refusing to vacate the judgments and sentences in two criminal causes and dismissing defendant's motion, which was filed under our Rule 27.26, 42 V.A.M.S. The matter will be reviewed de novo here. Rule 28.05. The order in question was made upon a review of the motion, the files and the records, and without hearing evidence. This the court may do under the express provisions of the rule, if he is thereby satisfied that the movant is entitled to no relief. State v. Cerny, Mo., 286 S.W.2d 804, 807; State v. Shell, Mo., 299 S.W.2d 465. The proceedings under Rule 27.26 constitute a collateral attack upon the judgment, and they must meet all the requirements of a collateral attack. State v. Cerny, supra. Appellant, who will be referred to as the defendant, asked that the two causes be consolidated for the purposes of his motion; they were so considered by the trial court, and we shall do likewise.

On October 17, 1933, defendant entered a plea of guilty to each of two separate charges of robbery with a dangerous and deadly weapon, which charges had been instituted by informations; these cases were numbered, respectively, 99922 and 99924. Defendant was thereupon sentenced, in each

case, to life imprisonment. The present motion, denominated as "Petition and Motion" and the argument attached, are rather voluminous; they are filed here by defendant pro se; they contain considerable intermingling of statements of fact, conclusions, and argument. Sundry exhibits are attached, consisting of copies of parts of the record, files and minutes, affidavits, and a newspaper article. We shall consider all these documents with considerable liberality from the standpoint of our rules.

The substance of defendant's contentions in the trial court were: that he was not represented by counsel, that he was not properly informed of the nature of the charges, that he was not given time to consult friends or counsel or to prepare his defense, that the proceedings were unduly hurried, that he was misled by promises of the police, and that, generally, he was "induced" and coerced into pleading guilty. He has elected to file a brief here, and his contentions as now presented in its "Points and Authorities" are: that he was not represented by counsel at the time of his allocution and sentence, in violation of the requirements of due process; that he may properly attack the sentence and judgment in this proceeding as in habeas corpus; that the court may go beyond the record and consider extraneous evidence; and that, by failure to deny his allegations, the state has admitted them.

It will be impossible to recite here all the facts alleged by the defendant or to discuss all his exhibits. We have, however, considered all of them. In substance he asserts: that he and his brother Orrin were arrested in Springfield on August 24, 1933; that the officers learned that the car he had had been stolen in Kansas and that he was wanted for questioning concerning "certain offenses alleged to have been committed" in Kansas; that he was held in jail for 41 days, was questioned repeatedly, and was abused, cursed and threatened by police and detectives. In this connection we note, parenthetically, that one of the exhibits is a newspaper article reciting the details of an attempted jail break in Springfield by defendant which, incidentally, was said to have occurred immediately upon the conclusion of an interview by him with two attorneys in the jail office. It was further stated in this article that defendant had gotten possession of a revolver with which he fired at least one shot; he also was shot in the hand and beaten with a pistol by a special officer who assisted in the process of subduing him, while he was fighting the jailer. Further, defendant asserts in his motion: that he was later told by detectives that if he would sign a statement "cleaning up" the police blotter, his brother would be released and he would be sentenced to a term not exceeding 10 years; that thus, under threats, coercion and misleading promises he signed a statement; that one Fred Stewart, an attorney, was employed to present an application for habeas corpus to the circuit court, for one or both (it being virtually impossible to tell which version is actually asserted); that upon a hearing on August 27, 1933, his brother was promptly released, but he was held; that Stewart's services were thereupon completed and terminated; that he, the defendant, subsequently told the prosecuting attorney of the "promises" made to him, that he was innocent, and that he wanted a lawyer, but that the latter replied that the detectives were not running his office, that he would have no difficulty in obtaining a conviction and that if he, defendant, refused to plead guilty the prosecutor would do his utmost to get the maximum penalty. He further asserts: that on October 17, 1933, he was taken without prior notice to the Circuit Court, in "shackles" and "chains"; that he then conversed briefly with the prosecuting attorney and that, in answer to his request, the prosecutor said that an attorney would be appointed for him "in time," but declined his request for a postponement; that informations against him were then and there filed for the first time; that the court appeared to read the informations to himself, told defendant that he was charged with the separate crimes of robbing two filling stations, and asked him how he wished to

plead; that he, alone, friendless, confused and ignorant of his rights, but knowing that he had signed a statement, "felt that perhaps he'd best throw himself on the mercy of the court," and pleaded guilty to both charges; that the prosecutor made no recommendation concerning the sentence or sentences; that defendant told the court what he considered to be mitigating circumstances, but that the court very "curtly" sentenced him to life imprisonment on each charge, the "entire proceedings of this 'so-called trial' taking less than fifteen (15) minutes actual time."

The record of the proceedings in each case on October 17, 1933, appears as two entries. The first entry in each case is as follows: "Comes now the Prosecuting Attorney of Greene County, who prosecutes on behalf of the State and as well the defendant in his own proper person and counsel appearing in his behalf, and the said defendant being now formally arraigned upon an information preferred against him by the Prosecuting Attorney of Greene County, charging him with the crime of Robbery With Fire Arms, for his plea thereto says that he cannot deny but that he is guilty in manner and form as he stands charged in said information and of this plea puts himself upon the mercy of the Court. Whereupon the Court having heard the plea aforesaid and being now fully advised and the premises herein being now seen and heard and fully understood, the Court doth find the defendant guilty as herein charged and doth fix and assess the punishment of the said defendant for his said crime at imprisonment in the State Penitentiary for a period of his natural life, to date from the 17th day of October, 1933. It is now therefore ordered and adjudged by the Court that the defendant stand committed unto the care and custody of the Sheriff of this County to await sentence and judgment of the Court herein." (There are two or three wholly immaterial typographical variations in the two entries.) The second entry in each case recites that the prosecuting attorney and "the defendant in his own proper person, and in the custody of the Sheriff"

appeared in open court, that defendant was granted allocution, and, he failing to show cause why judgment should not be pronounced, judgment and sentence were thereupon pronounced.

In August, 1954, defendant filed in the Circuit Court of Greene County motions for nunc pro tunc entries in each of these cases, seeking thereby to erase all recitals of the fact that he was represented by counsel. Both motions were overruled, appeals were taken, and the judgments were affirmed here. State v. Kitchin, Mo., 282 S.W.2d 1 and 5. As there shown, docket entries recited in three different places that defendant was representd by named counsel. The facts recited in that previous opinion may be considered as supplemental to those now stated. This court there held that there was no basis in the record for a nunc pro tunc order in either case, thus reaffirming the record entries showing that defendant was represented by counsel, as recited above. Defendant insists that in the present proceeding the trial court, as shown by its memorandum opinion filed, erroneously held that our prior opinion constitutes an adjudication that the records might not be impeached. We need not consider any allegation of error, for we are now passing upon this matter de novo. At least the finality of the form of the entries has been determined, and the sole remaining question is whether they may now be collaterally attacked.

Defendant has cited many federal cases; it would be wholly impracticable to discuss them individually. Generally, they establish the following propositions: that, consonant with due process, a defendant charged with a serious crime (including state proceedings) is entitled to the assistance of counsel unless he has intelligently waived that right; that this right includes the opportunity reasonably to consult with counsel and to prepare a defense; and that, in habeas corpus or other collateral proceedings, extraneous facts may be inquired into if they are *not inconsistent* with the recitals in the judgment; that otherwise, the

judgment recitals are conclusive, at least in the absence of fraud. Thus see generally: House v. Mayo, 324 U.S. 42, 65 S.Ct. 517, 89 L.Ed. 739; Haley v. State of Ohio, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224; White v. Ragen, 324 U.S. 760, 65 S.Ct. 978, 89 L. Ed. 1348; Hawk v. Olson, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61; Avery v. State of Alabama, 308 U.S. 444, 60 S.Ct. 321, 84 L. Ed. 377; Rice v. Olson, 324 U.S. 786, 65 S.Ct. 989, 89 L.Ed. 1367; Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; Wade v. Mayo, 334 U.S. 672, 68 S.Ct. 1270, 92 L.Ed. 1647; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; In re Cuddy, 131 U.S. 280, 9 S.Ct. 703, 33 L.Ed. 154; In re Mayfield, 141 U.S. 107, 11 S.Ct. 939, 35 L.Ed. 635; Williams v. Kaiser, 323 U.S. 471, 476, 65 S.Ct. 363, 89 L.Ed. 398; Tomkins v. State of Missouri, 323 U.S. 485, 65 S.Ct. 370, 89 L.Ed. 407. In addition to these cases, defendant cites several cases supposedly to the effect that the right to counsel includes the right to have counsel present at the time sentence is imposed. See: Kent v. Sanford, 5 Cir., 121 F.2d 216; Batson v. United States, 10 Cir., 137 F.2d 288; Thomas v. Hunter, 10 Cir., 153 F.2d 834; Wilfong v. Johnston, 9 Cir., 156 F.2d 507. These cases involved federal prosecutions, to which the Sixth Amendment of the U. S. Constitution strictly applies. See Foster v. People of State of Illinois, 332 U.S. 134, 67 S.Ct. 1716, 91 L. Ed. 1955. They definitely indicate a conflict of authority on the question, but in the view we take of the present case, we need not attempt to determine it. The Missouri cases cited are of no aid to the defendant.

Although defendant complained in his original motion of the lack of counsel at all stages, he emphasized, and in his brief here urges almost exclusively, a deprivation of due process from the supposed lack of counsel at the time of the judgment and sentence. We, therefore, note again that the record affirmatively recites the appearance of counsel when defendant was arraigned, when he entered the pleas of guilty, when the court thus found him guilty, and when the court "doth fix and assess the punishment * * * at imprisonment * * * for the term of his natural life" (in each case). And thereupon the court ordered defendant, as would seem entirely proper at such stage, committed to the custody of the sheriff. Considering first this particular part of the record, we hold that its recitals may not be impeached by the matters which defendant now asserts. These allegations are inconsistent with the recitals of the record itself, and they may not be asserted to impugn it. State v. Terrell, Mo., 276 S.W.2d 219, 220; Young v. Parker, Banc, 355 Mo. 245, 195 S.W.2d 743; State v. Harrison, Mo., 276 S.W.2d 222; State ex rel. Stewart v. Blair, Banc, 357 Mo. 287, 208 S.W.2d 268; State v. Harrison, Mo., 299 S.W.2d 479; Flansburg v. Kaiser, Banc, Mo., 184 S.W.2d 1004. For some reason, we know not why the court or clerk apparently elected to record the allocution and sentence in a different entry of the same day. However, while the latter entry does not affirmatively recite the appearance of counsel at that time, it certainly recites no *withdrawal* of counsel; this matter was discussed in our prior opinion at 282 S.W.2d loc. cit. 4, and, as there indicated, we decline to "accentuate the negative rather than the positive * * *." It seems entirely obvious that the acts and occurrences encompassed by both entries were a part of one continuous process; defendant himself states that the whole proceeding took not over fifteen minutes. He does not even assert, *as a fact*, that he was in court on more than one occasion on that day. He merely says in his argument, and very evasively, that it is "quite possible" that later in the day he was returned to the courtroom and sentenced. Under these circumstances we have no hesitancy in holding that the recital of representation by counsel is applicable to the entire proceedings, and that the ruling of the trial court was proper. Moreover, the first entry (which affirmatively recites the presence of counsel) included not only the arraignment and plea but the *fixing and assessment of the*

*punishment.* Thereafter, little remained but formalities, for allocution, § 546.570, RSMo 1949, V.A.M.S., is not required upon a plea of guilty. State v. Ashworth, 346 Mo. 869, 143 S.W.2d 279, and cases cited; and the imposition of the sentence would seem to follow as a matter of course. It would, therefore, be difficult to see how the absence of counsel at that stage, if true, could actually have been prejudicial.

Defendant's allegations concerning the supposed failure to inform him intelligently of the charges, of insufficient time for preparation, of coercion generally, and of being misled by promises concerning the length of his sentence, are all really corollary to, or a practical consequence of, the supposed lack of counsel. Since we hold that he had counsel, these matters require no separate treatment; they would stand merely as an attack upon the conduct of his counsel. As we construe the lengthy motion and supporting papers, there is no independent reliance upon physical abuse as the actual cause of defendant's confession or pleas of guilty; that seems to be added as additional background. Actually he says that he was influenced, coerced and induced to sign the confession and enter his pleas; and in one paper filed here (a petition for habeas corpus) he has referred specifically to an "agreement" between himself and the city detectives by which his brother was released but he was held, at least temporarily. Strictly speaking, it is not necessary to consider the matters referred to in this paragraph, in view of defendant's brief.

■ The defendant was granted a hearing in the Circuit Court of Cole County upon petition for habeas corpus, on July 16, 1954; his petition was dismissed and he was remanded to the custody of the warden. This is shown from our files. He then filed the motions and prosecuted the proceedings shown at 282 S.W.2d 1 and 5. He next filed in this court on November 2, 1955, a petition for habeas corpus, which is substantially identical in its allegations, argument, and exhibits with the present motion. We have read that petition, at the expense of considerable time and effort. That petition was denied, without hearing evidence, for failure to state a claim upon which relief could be granted. We do not rule the question of res adjudicata, for it is unnecessary. On this score the curious might note: State v. Shell, Mo., 299 S.W.2d 465; Wells v. United States, 5 Cir., 158 F.2d 833; Waley v. Johnston, 316 U.S. 101, 105, 62 S.Ct. 964, 86 L.Ed. 1302; Ex parte Clark, 208 Mo. 121, 106 S.W. 990, 15 L.R.A.,N.S., 389. The determination of a fact issue upon habeas corpus, after a hearing, should be binding everywhere as a final adjudication; perhaps we have no such adjudication shown of record here.

■ Defendant also asserts that his allegations are to be taken as admitted because the state has not denied them. The situation here is not that of an ordinary civil or criminal proceeding. The proceeding by motion under Rule 27.26 is very similar to habeas corpus. There, generally, no return is required unless and until the writ is issued and served, Chapter 532, RSMo 1949, V.A.M.S. Rule 27.26 requires no answer or response, but expressly gives the court the right to determine from the "motion and the files and records * * * that the prisoner is entitled to no relief * * *." We hold that no response was required here and that there was no admission of facts.

From a consideration of the whole record we hold that defendant's petition and motion to set aside the judgments and sentences aforesaid was properly dismissed; we further hold, and find, that defendant was and is entitled to no relief thereon. The judgment and order of the trial court are affirmed.

All concur.