STATE of Missouri, Respondent,

v.

Wesley MORELAND, Appellant.

No. 51333.

Supreme Court of Missouri,

Division No. 2.

Nov. 8, 1965.

Motion for Rehearing or to Transfer to Court En Banc Denied Dec. 13, 1965.

Norman H. Anderson, Atty. Gen., Howard L. McFadden, Asst. Atty. Gen., Jefferson City, for respondent.

Jay White. Rolla, for appellant.

EAGER, Presiding Judge.

This appeal is from an order denying a motion to vacate a judgment and sentence, filed under Rule 27.26, V.A.M.R. A prior appeal from an order denying the same motion was disposed of here by an opinion appearing at 351 S.W.2d 33. There we held that the motion raised questions of fact on which the petitioner was entitled to a hearing, and we reversed the judgment and remanded the case. Such a hearing has now been held, with the petitioner present and testifying, the trial court has made findings of fact as required by the Rule, and the motion has again been denied. We consider the matter de novo, Rule 28.05, but give deference to the findings of the trial court in so far as they involve the credibility of witnesses. Rule 73.01(d). We shall refer to the petitioner as the defendant.

Most of the necessary facts appear in our prior opinion, but for convenience we relate the essential background facts here. We have now a more complete record, for the entire Circuit Court file was offered and received in evidence at the hearing on the motion. On January 1, 1929, defendant was arrested upon complaint of one Dora Shinkle on a charge of forcible rape. A preliminary hearing was held on January 5, 1929, defendant was bound over to the Circuit Court, and he was remanded to jail in default of bond. Numerous witnesses were subpoenaed for the preliminary hearing and fourteen witnesses thereafter signed an appearance bond for their appearance in the Circuit Court at the January 1929 term. An information charging defendant with forcible rape was filed in the Circuit Court on January 28, 1929. The records of the Circuit Court, as more particularly set out in our prior opinion, show that defendant appeared in court on January 28, 1929, in custody of the sheriff, entered a plea of guilty and, after allocution, was sentenced to life imprisonment.

On January 28, 1947, defendant filed a petition for habeas corpus in the Circuit Court of Cole County. We shall refer to this and the ruling thereon later, as these facts now appear in certified form in the files of the Maries County Circuit Court which were made a part of the hearing record. The writ was denied after a hearing on February 15, 1947. On October 21, 1959, defendant filed in the Circuit Court of Maries

County a motion to vacate the judgment and sentence. Generally, both the petition and motion just referred to asserted the same grounds for relief as does the present motion, but with some differences and amplifications not now present. That motion to vacate was denied without a hearing, and no appeal was taken.

The grounds of the present motion filed on December 8, 1960, are well digested in our prior opinion. There we said: "The substance of those allegations is that (1) appellant had no counsel when he pleaded guilty, (2) the circuit court made no inquiry as to whether he had counsel or could obtain counsel to advise and assist him or whether he was 'intelligently able to knowingly waive such right,' and (3) the prosecuting attorney and the circuit court knew that he 'was an uneducated person having no experience with or knowledge of the law and having only the equivalent of a second grade elementary education.'" The real issue here now is whether defendant intelligently and voluntarily waived his right to counsel at the time of his plea. Defendant has made a casual allegation of "the duress of dire threats and false promises," which he has made no effort to sustain by evidence; he also alleged that he was arraigned without any preliminary examination which allegation is proven totally untrue by the files. On the prior appeal we concluded our opinion as follows: "We do not purport to imply what the true facts are as to appellant's allegations in his motion, or to infer what should be the 'findings of fact and conclusions of law with respect thereto.' However, appellant is entitled to a hearing on his motion in which he is afforded the opportunity to establish the facts as alleged in his motion, and it was error for the trial court to overrule the motion without the hearing contemplated and required under the circumstances by Supreme Court Rule 27.26."

We now consider the record of the hearing held pursuant to our mandate. Defendant was represented by counsel at that hearing, and the same counsel has briefed and argued this appeal.

Defendant testified in substance as now related. He was born in 1888, and was "around 40" at the time of these events; he had been and was engaged in farm work; he had gone to the second grade in school, but had learned to read and write after leaving school; he was, at the time of the hearing, too nervous to write; he had known the complainant all his life and formerly worked for her; he was arrested and placed in jail where he remained for nearly a month before his arraignment; he first said that he did not remember what happened on the day he entered his plea and that this was the first time he was ever in the courthouse, but he then proceeded to detail the occurrences; on direct examination he testified that the Judge said that he was charged with rape, and that the prosecuting attorney asked him how he pleaded; that he entered a plea of guilty by nodding his head (his evidence was somewhat incomplete at that point, but it was apparently cleared up later), and the Judge said: "I give you life"; that he started out the door with the sheriff and the Judge told him to wait, saying: "Have you a lawyer?"; that he answered that he did not, and the Judge said: "The court could * * * [later related as "could give you one"] but "he didn't say he would," and, finally, the Judge said: "Take him on out"; that he never told the Judge that he did not want a lawyer, and that he had no money to hire one; that he had his dinner and was taken to the penitentiary that evening. Defendant also testified that the prosecutor had previously told his father, mother, uncle and aunt that if he would plead guilty "he'd give me five years * * *"; but I said "Well, I ain't guilty * * *"; that "they," meaning his immediate family, "told me to plead guilty"; that it was his understanding at the time of the plea that he would get five years, but he did not know whether the Judge had been consulted; that no one informed him of the limits of punishment for this charge.

On cross-examination (and redirect) the defendant testified: that his uncle Dave James owned a large farm, and was present in court at the time of his sentence, but he made no statement concerning his supposed agreement with the prosecutor; that he, defendant, did not ask to talk to an attorney, and that the Judge never told him that he did not need one; that the Judge said that he "could appoint me a lawyer but he never said he would"; that he did not ask defendant if he wanted a lawyer; that he did not know if lawyers were present in the courtroom; that, so far as he knew the sheriff never refused to let anyone see him in the jail, but nobody came to see him there; that he should have had a lawyer.

The testimony of defendant as to whether or not he told his fellow prisoner(s) what to incorporate into the present motion, is very conflicting; at some places he said "It's their idea," that he never told "him" what to "write," and that he "never told nobody to write it"; at another place it was indicated that he did tell his helper or helpers what had "happened here" and "give him ten dollars." Actually, this is not material, for the motion was filed and it is here for our action. The background does, perhaps, shed some light upon some of the rather extravagant allegations. Defendant's testimony regarding the holding of a preliminary hearing was also contradictory in and of itself. Defendant did miscalculate his age, stating that he would be seventy-two within a few days, although he was born in 1888. He had been paroled "a couple of years ago," but for a "very short time."

Judge Henry J. Westhues, Judge of that Circuit at the time of the sentence, testified at some length. He stated that he "remembered the occasion very well." We deem it advisable to quote material portions of his testimony as follows: "Q I'll ask you, Judge, if—whether or not at that time that you informed the defendant of his rights? A Most certainly did, because he was brought into Court and Leslie Hutchison read the Information to him and asked him how he pleaded, and he says, 'Well, I want to plead guilty.' I said, 'Just wait a minute,' I said, 'Now, you have a right to be represented by a lawyer, and have you one?' And he says, 'No, sir.' 'Have you talked to your friends about this?' He says, 'No, sir.' I said, 'Well, what are the circumstances of this crime?' So Leslie Hutchison, quite in detail, told me about it, before the defendant, how this crime was committed and how the woman suffered, terrible ordeal she went through. And I said, 'Well, have you any recommendation to make?' He said, 'I recommend thirty-five years.' I turned to the defendant there, Mr. Moreland. I said, 'Has the Prosecuting Attorney stated the facts in this case?' He says, 'Just—just about.' I said, 'Well, have you anything to add?' He says, 'No, sir.' I said to him right then and there, 'I cannot follow the recommendation of the Prosecuting Attorney and I'm not going to accept your plea of guilty today. You talk to your friend or get a lawyer to defend you, and I'm not going to give you that amount of punishment; and your punishment will either be life or death, and you think it over till tomorrow,' and had the Sheriff take him out.

"Next day he came back and I asked him if he thought it over, and he said, 'Yes.' I said, 'Well, have you talked to a lawyer? He says, 'No.' I says, 'You want one?' 'No, sir.' 'Talked to your friends?' He said, 'No, sir, no use talking to my friends.' Said, 'Well, what's your plea?' He said, 'Well, I enter a plea of guilty.' And I told him at that time that if I thought he was ever gonna apply for a parole I'd give him the death penalty, but in view of the fact that he was pleading guilty I was going to give him life imprisonment, and I wrote the penitentiary officials that I was protesting a parole for him at any time." The witness testified also: that the crime, as related, was very brutal, and that defendant's "only excuse" was that he thought he had been drinking; that he certainly did not tell the defendant that he could not have counsel, and that he had many times appointed counsel for indigent defendants; that he did not

inquire about defendant's education but that he appeared to be "a very intelligent individual"; that he answered the Judge's questions freely and seemed "to know what he was doing"; that in his experience a farmer is not necessarily ignorant. A. B. Massey, who was Sheriff of Maries County at the time, testified: that he recalled defendant and the occurrences; that he never refused anyone the right to visit defendant while he was in jail, nor had he refused visitors to anyone while he was Sheriff.

Following the hearing, the Circuit Court made and entered its order as follows: "Applicant James Wesley Moreland appears in person and with his attorney, Jay White. Prosecuting Attorney appears. Both sides announce ready for hearing. Hearing proceeds and evidence offered by applicant and by Prosecuting Attorney heard.

"It is found from the evidence that on the day and date applicant appeared in this court to answer on the charge of rape then pending against him, this court had jurisdiction of the person of the applicant and of the cause. It is further found that on the day and date the defendant, now the applicant, entered his plea of guilty to the charge pending against him, that is, rape, he did so voluntarily. It is found that defendant on the date he entered his plea of guilty and was thereupon sentenced to imprisonment in the State Penitentiary for and during his natural life and on which sentence and judgment he has since been confined, and is now confined in the penitentiary, he was not represented by counsel, but this court finds from the evidence in this hearing that defendant intelligently waived counsel after explanation to him by the sentencing Judge of his right to have counsel. It is found from the evidence that at the time of defendant's plea of guilty he was mentally competent and able to understand the nature of the proceedings, and that the penalty that would be imposed upon his plea of guilty was fully explained by the court and defendant given time until the following day to consider his need for counsel and to consider entering a plea of not guilty, and that following the expiration of time given him for such considerations, he voluntarily and intelligently waived counsel and entered his plea of guilty upon which plea sentence was imposed. It is found as a matter of law that the sentence so imposed was within the statutory range of punishment for crime to which defendant pleaded guilty. Application to vacate and set aside judgment and sentence denied."

■ It seems obvious that the court gave full credence to the testimony of Judge Westhues; this is not surprising, inasmuch as his most excellent reputation is known throughout the state. It should also be noted that the defendant, to some slight extent at least, though rather grudgingly, corroborated the testimony of Judge Westhues. After a hearing, we do not assume that any of the allegations of the motion are true. They must be proven, and the burden of proof is on the defendant. Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Moore v. State of Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L.Ed.2d 167; Quicksall v. People of State of Michigan, 339 U.S. 660, 70 S.Ct. 910, 94 L.Ed. 1188; State v. McDonald, Mo., 343 S.W.2d 68. Before proceeding further, we note from the prior petition for habeas corpus the sworn statements of defendant to the effect that the members of his immediate family had consulted with the prosecutor about the possible sentence two days before his arraignment and that they had "relayed" the information to him that he would get a "light" sentence upon a plea of guilty. It thus appears from defendant's own sworn statements that he had consulted with the members of his family prior to his arraignment. We note also from the testimony of Judge Westhues to which we, like the trial court, afford full credibility, that all ideas of a "light" sentence were expressly dispelled by the court prior to the actual acceptance of defendant's plea; therein the court told defendant that it would not accept the recommendation of thirty-five years but would impose a life sentence or the death penalty, but gave defendant time

until the next day to think the matter over. In view of the positive testimony of Judge Westhues regarding the delay, we do not regard as persuasive the fact that the formal record of the plea, judgment and sentence was entered as of January 28, 1929.

■■■ Our courts have universally held that a defendant charged with a serious crime has the right to the assistance of counsel and that, if he is unable to employ one, the court should appoint counsel; this right, of course, extends to the time of his arraignment and plea, as well as to the trial. But the right to counsel may be waived, if the waiver is voluntarily and intelligently made. State v. McDonald, Mo., 343 S.W.2d 68, 71; State v. Glenn, Mo., 317 S.W.2d 403. In Glenn we also held that the burden is upon the defendant to prove any alleged incompetency to waive. See, also, generally: State v. Kitchin, Mo., 300 S.W.2d 420; State v. Shell, Mo., 299 S.W. 2d 465; certiorari denied Shell v. State, 353 U.S. 967, 77 S.Ct. 1052, 1 L.Ed.2d 916, certiorari denied 356 U.S. 939, 78 S.Ct. 782, 2 L.Ed.2d 814. The latter two cases further hold, as we shall note later, that when a defendant has once had a hearing and findings have been made adjudicating a fact issue in one collateral attack, the determination is conclusive of that issue in all subsequent attacks.

In many federal cases the courts have enforced the rights of defendants to the assistance of counsel as a fundamental right guaranteed by the due process clause. Powell v. State of Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Williams v. Kaiser, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398; Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799; Commonwealth of Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 76 S.Ct. 223, 100 L.Ed. 126; Moore v. State of Michigan, 355 U.S. 155, 78 S.Ct. 191, 2 L. Ed.2d 167; Carter v. People of State of Illinois, 329 U.S. 173, 67 S.Ct. 216, 91 L.Ed. 172. But in none of these, so far as we have found, have the courts ever denied the effectiveness of a waiver of the right to counsel, voluntarily and intelligently made. In several of such cases supposed waivers were held ineffective because of such circumstances as possible mental impairment, threats or implications of possible mob violence, or coercion of any sort, where any such element or elements appeared to have materially influenced the plea of guilty.

In the present case there is no claim of threats, intimidation or coercion. The arraignment took place twenty-eight days after the arrest. The defendant had admittedly consulted with members of his immediate family, even if (as he says) only two days prior to the arraignment. There can be no denial now of his assertion, since it appears that in this period of over thirty-six years the interested persons have died. Much water has gone over the dam since 1929.

While we have not followed specifically the points of appellant's brief, we consider that our discussions and rulings have answered them. They were, in substance: that the right to counsel at every stage is a fundamental right under the due process guarantee, and that a conviction is invalidated thereby if counsel is not assigned whether requested or not, when the accused is so poor, uneducated and inexperienced as to be incompetent to determine his need.

■■■ We adopt as our own the findings of the trial court, after a full consideration of all the files and of the transcript of the hearing. This necessarily results in an affirmance of the judgment of the trial court. In conclusion, however, we note that the same result might have been arrived at under the doctrine of res adjudicata, by reason of the finding of the Circuit Court of Cole County adverse to this defendant in the habeas corpus proceeding. The allegations made there contained the substance of those here, namely, the failure to protect petitioner's constitutional right to counsel. It is shown in our present transcript that Judge Westhues testified there; we may assume that the defendant did also and that

the fact issues determined included the fact issue before us in this proceeding. The court remanded the defendant to the custody of the Warden, thus deciding the issue mentioned, and all others, against him. Such a factual determination, after hearing, is conclusive of the issues so adjudicated. State v. Kitchin, Mo., 300 S.W.2d 420; State v. Shell, Mo., 299 S.W.2d 465. However, since we do not have the full record of the habeas corpus proceedings before us, including a transcript of the evidence, we prefer not to rule the present appeal upon the theory of res adjudicata. We have made our findings and rest the decision upon them.

The judgment is affirmed.

All of the Judges concur.