**STATE of Missouri, Respondent,**

v.

**Bitz RICHARDSON, Appellant.**

No. 48480.

Supreme Court of Missouri,

Division No. 1.

June 12, 1961.

---

Grace S. Day, St. Joseph, for appellant.

Thomas F. Eagleton, Atty. Gen., Scott O. Wright, Sp. Asst. Atty. Gen., for respondent.

DALTON, Judge.

This is a proceeding under Supreme Court Rule 27.26, V.A.M.R., to vacate and set aside a judgment and sentence of life imprisonment entered against movant (hereinafter referred to as defendant) by the Circuit Court of Henry County on December 30, 1958, upon a plea of guilty to a charge of murder in the first degree.

The motion charged generally "that said judgment and sentence of the Court was imposed in violation of the Constitution and Laws of the United States, and in violation of the Constitution and Laws of the State of Missouri, that said defendant has been restrained of his liberty without due process of law, and further that said Court was without jurisdiction to render said judgment and sentence heretofore imposed." No specific constitutional provisions were cited, described or otherwise referred to in the motion.

It was further alleged (1) that the magistrate court, wherein a complaint had been filed against defendant charging murder in the first degree, had "lost jurisdiction of the case * * * and therefore had no authority to certify said cause to the Circuit Court of Henry County, thereby making all further proceedings void and of no effect" because the records of the said magistrate court failed to make entries of continuances of said cause at ten day intervals from September 18, 1958, the date of defendant's arrest, to December 23, 1958, when an order was entered showing that the defendant had waived his preliminary hearing and ordering that the defendant be held without bond to await the action of the circuit court of said county; (2) that the information filed in said cause on the 29th day of December, 1958, "was defective and invalid for failure to show endorsement of witnesses on the information" and, without such endorsement, the defendant could not be fully informed of the charge against him; (3) that after the judgment and sentence of the court had been entered upon defendant's plea of guilty, a certified copy of such judgment and sentence failed to state the degree of murder as required by the statutes of the State and "therefore defendant has been committed to the penitentiary on an invalid and void sentence, which sentence should therefore be vacated and set aside"; and (4) "that although represented by counsel, defendant was not informed of material facts within the knowledge of his attorney and therefore entered a plea of guilty under a misrepresentation of the true facts in the case * * *; that defendant's attorney kept telling defendant that he was going to get the gas chamber until defendant became so confused and alarmed and placed in such apprehension and fear that he was in such a disturbed frame of mind that defendant did not realize what he was doing at the time he entered his plea of guilty to said charge." The facts, as to which it is alleged the defendant was not advised, were then reviewed, together with a statement of the alleged representations and promises

made by his attorney, and a charge that "For these promises said defendant paid his attorney the sum of $1500 over and above the $3500 fee he had already paid his attorney."

■ The legal sufficiency of the motion was not tested by a motion to dismiss [see State v. Warren, Mo.Sup., 321 S.W.2d 705, 710; State v. Cerny, 365 Mo. 732, 286 S.W.2d 804, 807(5)] but the cause was heard by the court on January 21, 1960, taken under advisement and time granted for the filing of briefs. Thereafter, on August 29, 1960, defendant's motion was overruled and defendant filed notice of appeal. We shall review the cause de novo. Supreme Court Rule 28.05; State v. Cerny, supra. The evidence offered in support of the motion will be stated with reference to the specific assignments.

■ Proceedings by motion to vacate a judgment of conviction and sentence under Rule 27.26 are similar in nature to habeas corpus and no response by the State is required unless the writ is issued and served. However, defendant's allegations in support of such a motion are not to be taken as admitted merely because the State has not denied them. State v. Kitchin, Mo. Sup., 300 S.W.2d 420, 425(7).

Appellant contends that the court erred in failing to vacate and set aside the judgment and sentence because the information filed in the circuit court was defective and invalid for failure to show the endorsement of witnesses on the back of said information. Appellant further contends that the filing of said information in said court on December 29, 1958, with no witnesses endorsed thereon was prejudicial to the appellant. Appellant cites Supreme Court Rule 24.17, Sec. 545.070 RSMo 1949 (perhaps Sec. 545.240 was intended) V.A.M.S. and State v. Parks, Mo.Sup., 331 S.W.2d 547.

In this case the names of no witnesses were endorsed on the back of the information filed. The information was otherwise in due form and charged the defendant with murder in the first degree of one Tom Gregg by shooting him several times on September 18, 1958, in Henry County, Missouri. No motion to quash was filed. Defendant with his counsel, and without objection, appeared in person to the charge and entered a plea of guilty.

■ While the mentioned statute and subsequent rule of this Court required the endorsement of witnesses, the requirement is for defendant's benefit and the defect could be and was waived under the facts shown. A judgment and sentence, otherwise valid, will not be set aside, unless it is clearly shown *upon a proper appeal* that defendant was prejudiced by the failure to endorse the names of witnesses. State v. Parks, supra, 331 S.W.2d 547, 550. The information was not void by reason of the defect noted, nor was the judgment and sentence based thereon void under the facts shown. State v. Long, 209 Mo. 366, 108 S.W. 35, 37.

Appellant further contends that "the court erred in failing to vacate and set aside the judgment and sentence of the court heretofore entered because the magistrate court lost jurisdiction." Appellant argues that he was arraigned in the magistrate court on September 19, 1958, and the next entry in the magistrate court is that on December 23, 1958, preliminary hearing was waived. Appellant contends that, "This is contra to the laws of the State of Missouri in failing to show continuance of said preliminary from time to time not to exceed ten days"; and that the magistrate court had no jurisdiction to certify the case to the circuit court and therefore any further entries of the circuit court are void. Appellant cites Supreme Court Rules 23.02 and 23.06 and Secs. 544.250 and 544.320 RSMo 1949, V.A.M.S.

■ We need not further consider this assignment because the primary purpose of a proceeding in the magistrate court in a felony case is to have a warrant issued for the defendant's arrest, grant a preliminary

hearing to determine whether probable cause exists as to defendant's guilt, and if such cause is shown, or if hearing is waived, to hold defendant or require him to give bond to answer such charge, if any, as may be filed against him in the circuit court. Nor need we rule the sufficiency of the record to show waiver by defendant of his preliminary hearing in the magistrate court for the reason that the record presented shows that a valid and sufficient information charging defendant with murder in the first degree was filed in the circuit court subsequent to the alleged waiver of preliminary hearing in the magistrate court; and that defendant thereafter appeared thereto in person and by attorney in the circuit court and entered a plea of guilty to the offense charged, and without objection or moving to quash or abate said information on the ground that no preliminary hearing had been held or waived in the magistrate court and making proof thereof. State v. Shields, 296 Mo. 389, 246 S.W. 932, 934(5); State v. Jack, Mo. Sup., 209 S.W. 890(2). The right to a preliminary examination as a condition precedent to the filing of an information is not jurisdictional, the jurisdiction of the circuit court is not derivative and a failure to accord the right to a preliminary hearing can only be taken advantage of by calling the trial court's attention to same by an appropriate motion and offering proof to establish the fact of such failure. State v. Ferguson, 278 Mo. 119, 212 S.W. 339; State v. Ancell, 333 Mo. 26, 62 S.W.2d 443 and State v. Thomas, 353 Mo. 345, 182 S.W.2d 534. Any defects in the record attending the waiver of the preliminary hearing or of other proceedings in the magistrate court were waived when defendant, represented by counsel, appeared in the circuit court, announced ready and entered his plea of guilty to the charge of murder in the first degree stated in the information. Tucker v. Kaiser, Mo.Sup., 176 S.W.2d 622, 623; State v. Taylor, 362 Mo. 676, 243 S.W.2d 301 and State v. Smart, Mo.Sup., 328 S.W. 2d 569, 575.

■ Appellant further contends that the court erred in failing to vacate the judgment and sentence because the judgment and sentence was void since the clerk of the circuit court made a certified copy of the judgment, together with commitment papers, to accompany the defendant when he was removed from Clinton to Jefferson City, and in copying the judgment the clerk omitted to show the degree of murder. The evidence shows that, when the sheriff and defendant reached Jefferson City, the officers at the penitentiary refused to accept the defendant, because "no degree of murder was shown on the commitment papers" and the sheriff placed defendant in the Cole County Jail until a new certified copy of the judgment could be and was obtained from the Circuit Court of Henry County. When it was obtained and showed the judgment and sentence in proper form defendant was presented to and received by the officers at the State Penitentiary. The commitment papers under which defendant is now held show a valid judgment and sentence. This assignment is based solely on the fact that the clerk made an erroneous copy of the judgment when making out the first commitment papers. There is no contention that the judgment, as it appears of record in the clerk's office, was ever erroneous in the respect mentioned. The judgment as written controls. State v. Harrison, Mo.Sup., 276 S.W.2d 222, 226. The assignment is overruled.

■ Appellant further contends that the court erred in failing to vacate the judgment and sentence "because the court should have rejected a plea of guilty." Appellant argues that he was "denied his constitutional rights and has been prejudiced by the court under the facts and circumstances surrounding this case in accepting a plea of guilty." No particular constitutional provisions are cited or referred to. No evidence was presented tending to show that any of the facts relied upon to support other assignments of error were known to the court at the time the plea was accepted. Defendant was represented

by and appeared with counsel. The charge in the information was based upon facts which were alleged to have happened on September 18, 1958, prior to the entering of the plea on December 30, 1958. The record is devoid of any evidence tending to support a finding of facts which would have required the court to reject a plea of guilty, or to have ordered a jury trial. There is no evidence tending to show that the court did not make inquiry as to the true facts of the case and the circumstances supporting the charge of murder in the first degree. Appellant argues that "any inquiry at all on the part of the court would have disclosed the fact of the death of a witness", as if such fact, if true, would have exonerated defendant, if guilty, from the crime charged against him. No competent evidence was offered tending to show that any eyewitness to the alleged crime was, in fact, dead when the plea was entered. The issue as to the death of a witness was submitted on hearsay testimony. Further, no evidence was offered to show that the court had any knowledge that defendant was "hard of hearing and of low mentality", if such facts existed at the time the plea was entered. Further, no application was made to withdraw the plea of guilty after the court had entered the sentence of life imprisonment. The record wholly fails to support the contention that the court erred in accepting the plea of guilty.

Appellant further contends that the court erred in failing to vacate the judgment and sentence because "appellant was never informed of material facts and counsel rendered appellant such ineffective assistance that his sentence was tantamount to a denial of due process." Appellant insists that his "plea of guilty was induced by fraud, apprehension, fear, persuasion, and under a misrepresentation of the true facts in this case, thereby denying him his constitutional rights." The 6th and 14th Amendments to the Constitution of the United States are cited and Secs. 10 and 18(a) of Art. I of the Constitution of Missouri, 1945, V.A. M.S.

Before reviewing the evidence in support of this assignment, we should point out that, although the information filed against defendant charged him with the crime of murder in the first degree of one Tom Gregg in Henry County, Missouri, on the 18th of September, 1958, the testimony offered in support of defendant's motion to vacate the judgment and sentence, as entered upon his plea of guilty on December 30, 1958, contains no evidence tending to show the facts and circumstances attending the mentioned killing, if any (either favorable to the State or defendant), nor any competent evidence as to the number of eyewitnesses, if any; what any witnesses would have testified to concerning the alleged facts, nor as to the death of any of the persons who may have claimed to have been witnesses to the alleged crime. No evidence was offered tending to show that defendant was innocent of the charge to which he entered his plea of guilty, nor was there any evidence that defendant or anyone else would have testified to facts tending to show alibi, self-defense, heat of passion, accident, misfortune or other defense.

In support of his motion to vacate the judgment defendant testified that he was confined in the State Penitentiary, under a sentence of life imprisonment; that he was very hard of hearing; that he was arrested on September 18 or 19, 1958, on a charge of murder and appeared before Mark Wilson, Magistrate Judge, on September 19, 1958; that he did not at any time request that his case be set down for a preliminary hearing; that he next appeared in said court on December 23, 1958, when his preliminary hearing was waived; that he retained an attorney, who conferred with him five or six times at the Henry County jail; that he first saw his attorney on October 25, 1958; that his attorney advised him he had been employed to represent him and he was going to have him

examined by a physician and hire two other lawyers to assist in his case, and, after the election in November, he would take him over to his office where they could talk for three or four hours and no tape recording would be made of their conversations. His attorney told him that he would go to Bates County to check on Gregg, the deceased, and check on an old charge against defendant; that he would get everything together and have a trial about the middle of January. On December 6, 1958, his attorney came to the jail and said he had found out nothing in Bates County, except that Mrs. Gregg had hired a lawyer to help prosecute defendant, and that Mr. Cason, the Prosecuting Attorney of Henry County, had called the Attorney General's office into the case and also the prosecutor from Bates County. When defendant told his attorney that he wanted to have a preliminary hearing, the attorney said he was not ready, and said "you can't make bond." He asked his attorney if he could have a preliminary hearing without taking the stand, and his attorney said "No, they will make you testify." On December 13, his attorney told him there was nothing he could do about the preliminary hearing and that he was going to send the case up to the circuit court. His attorney said the judge and prosecuting attorney wanted a plea of guilty and were going to give defendant the gas chamber; and that he had offered a plea of guilty for a life sentence. His attorney told him that five prosecuting attorneys and the attorney Mrs. Gregg had hired, were going to prosecute him; that they had three eyewitnesses who would take the stand and put the finger on him; and that the sheriff was going to testify against him and say that defendant came over to the court house and told him he "was going over there and kill that s— o— b———." When defendant wanted to confront the sheriff about the matter right then, the attorney said, "No, he is the maddest man I ever saw." The attorney said he had found that defendant had gotten a seven-years' sentence for murder before,

not two years; that several weeks later, he came back and told defendant he was worried; that he asked, "Did they shake that jail down and get those razor blades all out of there?"; and that defendant said they did, and the attorney stated he had had that done, because "I'm pleading you guilty and giving you the gas chamber, and I was afraid you would cut your throat." The attorney also said the sheriff was trying to pin the saws on defendant and that a neighbor had been offered $5 by some one to be a witness against defendant.

On December 23, 1958, defendant was taken over to the courthouse and his attorney informed him that they had worked out some deal by which it would take $1500 to be split three ways and for his wife to bring it to the jail; and that the attorney also said, "We will go in here before the (magistrate) judge and I'll just tell him that we're going to send your case up to the circuit court. I'll turn around and ask you is that what you want to do and you tell him yes. * * * We have caught the news reporters all out of town."

On December 30, 1958, his attorney said they would go before the circuit judge, and "You go ahead and plead guilty to it, and these papers here won't be on record against you, and the sheriff will take you to Jefferson City, and we're going to leave the degree off of the commitment papers." His attorney said that about the 15th of January he would come to Jefferson City to see him and get him placed out on the farm; that in five or six months, he'd investigate the papers and find the "unlegal sentence" and then have defendant kicked out.

Defendant further said he paid his attorney the $1,500 his wife brought to the jail and that he had already paid him $3,-500; that "when I hired him * * * they paid him $500 to start", making $5500; that every time he talked with his attorney, he would tell him there were three eyewitnesses that would testify against him and also the sheriff; that his attorney promised

to have him out of the penitentiary in four or five months, no longer than eight months; and he was told that Eversole, a witness had identified defendant as the man who committed the murder and would testify against him. Defendant did not know that Eversole had died. He said he did not know the names of the men that were with Gregg at the time of the shooting, but they had been to defendant's place and helped haul out poles. Defendant first learned of Eversole's death from the sheriff on the way to Jefferson City to the penitentiary, after he had already entered his guilty plea. The sheriff asked him why he plead guilty when, "You didn't have but one witness and he died * * * he got shot * * * he has been dead a month and a half."

Defendant said he would not have plead guilty had he known of the death of this witness. After he entered his plea he never saw his attorney again, although he wrote to him many times, but received no answers. During the time he was in jail he was in fear for his life because of continual talk by his attorney about getting the gas chamber. On cross-examination defendant testified that he didn't know what went on from the time of his arrest until just a few days before October 25, 1958. His attorney never asked him how this alleged incident occurred or any facts about the murder, but did inform him that he was charged with murder in the first degree. When defendant was taken to the courthouse on December 30, 1958, at the time a plea was entered, he did not understand the proceedings that were going on and he could not hear what was said. His attorney told him he "would have to plead guilty to it to get around the gas chamber" and to just go ahead and plead guilty, and then, if they said anything, to just say "Yes." He admitted that he realized on December 30, 1958, that he was charged with murder in the first degree. He remembered being sentenced, but he plead guilty on the basis of the things his attorney represented to him, to wit, that three eyewitnesses identified

him in the line-up and also identified his picture.

Defendant further testified that he told his attorney he had previously been convicted of a murder in about 1943 and had served a prison term in Arkansas. While in the jail at Clinton, he had no newspapers, except during the last week, when some were slipped through the wall to the prisoners. On the way to Jefferson City the sheriff told him that he had a gun that was taken from the deceased man, Gregg. Defendant was taken to the penitentiary on the same day his plea was entered. When he got there they did not accept him because there was no degree of murder on the papers, and he was taken to the Cole County Jail until the next day, when the papers were changed and he was returned to the prison.

Defendant's wife testified that she lived and worked in Kansas City; that she had retained the attorney for her husband; that in early December, she informed him that defendant wanted a preliminary hearing, but the attorney said he was not ready. On December 20, 1958, she, defendant's son, Cotton, and the attorney went to the vault in the sheriff's office and listened to the tape recording of the coroner's inquest. The only witness who testified was Sam Eversole. The attorney told her that Mr. Havens, the only other party who was there at the scene of the alleged crime, would not identify defendant, but he did not inform her of the death of Mr. Eversole and she did not find out about it until it appeared in the Kansas City paper the day after defendant entered his plea of guilty. On New Year's day, 1959, she came to the jail to pick up defendant's clothing and the sheriff's wife told her that Eversole had died of a gun-shot wound on the 11th of November. She had understood all along that defendant was to have a trial in January, but on December 20, after they heard the tape recording of the inquest, the attorney told defendant that he had better plead guilty. The attorney also informed her that for

some money he would be able to get defendant out of the penitentiary. He requested her to bring $1,500 cash to defendant at the jail on December 27, 1958. She did so. The frame of mind of her husband was such that the attorney asked her, if she would pay for a psychiatrist to have him examined, and she stated that she would. Defendant was very nervous and upset. She objected to the attorney waiving defendant's preliminary hearing but he told her that defendant would get the gas chamber if he went to trial. Her husband had informed her that Mr. Gregg had a gun and that it was on the ground by the truck at the scene of the crime. She said the attorney told her that defendant wouldn't have to be in the penitentiary over eight months.

Defendant's wife further testified that the attorney had previously told her that for a certain amount he could help her husband out later, perhaps in six or eight months. The $1,500 in cash she gave her husband at the jail was "in addition to $3,500 that had been paid" to the attorney. On cross-examination, she said "We had to pay him $500 to take the case"; and that he said he would get him out for $3,500. She said she paid only $250 in cash and that such was the only amount she saw anyone pay him. Others were to pay $250. Later, she said she paid $500 when she first visited the attorney and hired him. She also said she saw a check from a son in Cuba. Later, she said these payments were in addition to a deed of trust on a farm for $3,500, which deed was finally paid off and released. No documentary evidence was offered in support of these alleged payments.

Lawrence Sartin, the sheriff, testified that the first time he heard that Sam Eversole had been shot was after defendant entered his plea of guilty. He stated that the officials at the penitentiary refused to accept defendant because the circuit clerk had made an error in the papers, the words "first degree" being omitted from the papers taken to the penitentiary. After correction was made, defendant was accepted. He knew nothing about being a witness in this case against defendant.

The State offered, as a witness, only the magistrate judge, who testified as to the proceedings in his court; and that defendant's attorney appeared a few days after defendant's arrest and told him he would let him know if he wanted a preliminary hearing. Later, defendant and his attorney appeared and waived a preliminary hearing.

On this record appellant insists that "material facts which were within the knowledge of his attorney were never told to the appellant"; that appellant "became so disturbed that he did not realize what he was forced into doing at the time he entered his plea"; and that "appellant was never informed about the true facts of his case, so that he could make an honest decision as to what he could do." The record does not support these conclusions.

While perhaps the State should have called the attorney as a witness, it is clearly apparent that the trial court disbelieved much, if not all, of the evidence offered in support of defendant's motion to vacate the judgment, since the motion was overruled without comment.

As stated, we review the record de novo on this appeal and reach our own conclusions as to the weight and value of the testimony, nevertheless the judgment should not be set aside unless clearly erroneous, and due regard must be given to the opportunity of the trial court to judge of the credibility of the witnesses. Supreme Court Rule 73.01(d). On the record presented we must and do defer to the trial court's finding. The record wholly fails to establish that defendant's plea of guilty was entered by reason of "fraud, apprehension, fear, persuasion, and * * * misrepresentation", or that defendant's constitutional rights were violated.

The judgment is affirmed.

All concur.