**STATE of Missouri, Respondent,**

v.

**Bobby Lee GUNTHER, Appellant.**

No. 52553.

Supreme Court of Missouri,
Division No. 1.

June 12, 1967.

Norman H. Anderson, Atty. Gen., Moody Mansur, Asst. Atty. Gen., Jefferson City, for respondent.

J. Whitfield Moody, J. Arnot Hill, The Legal Aid and Defender Society of Greater Kansas City, Kansas City, for appellant.

HIGGINS, Commissioner.

Appellant, on March 24, 1965, pleaded guilty to a charge of robbery, first degree, and was sentenced to 8-years' imprisonment in the penitentiary. §§ 560.120 and 560.135, V.A.M.S. On July 12, 1966, he filed a motion to withdraw his plea of guilty and for vacation of sentence and judgment under Criminal Rules 27.25 and 27.26, V.A. M.R. The court overruled the motion after an evidentiary hearing at which defendant was present in person and by counsel, Mr. J. Arnot Hill.

Appellant charges that Mr. Michael Konomos, a lawyer hired to defend the robbery charge by his family, was ineffective. He claims that Mr. Konomos failed to produce witnesses who would provide an alibi for him and that he told appellant he was charged under the Habitual Criminal Act and should "just go over and plead guilty and you will get eight years, otherwise you will be without counsel and will receive a life sentence" because of race and past record.

At the sentencing March 24, 1965, the following proceedings were recorded:

"THE COURT: All right, gentlemen, this is State of Missouri versus Bobby Lee Gunther. Are you Bobby Lee Gunther? THE DEFENDANT: Yes, I am.

"THE COURT: You are charged with Robbery First Degree, Mr. Gunther. I understand you have pleaded not guilty formerly. Do you at this time desire to change your plea? THE DEFENDANT: Yes.

"THE COURT: How do you plead? THE DEFENDANT: Guilty. THE COURT: You are pleading guilty to this charge of Robbery First Degree? THE DEFENDANT: Yes. THE COURT: Have any threats or promises been made to you to induce you to make this plea? THE DEFENDANT: No.

"THE COURT: Have you discussed it with your attorney, Mr. Konomos? THE

DEFENDANT: Yes. THE COURT: Do you understand you have a right to have your case tried before a jury? THE DEFENDANT: Yes. THE COURT: You are waiving that right by entering this plea, is that right? THE DEFENDANT: Yes.

"THE COURT: You are pleading guilty to this charge because you are guilty, is that right? THE DEFENDANT: I am pleading guilty. THE COURT: Are you guilty? THE DEFENDANT: I am guilty. THE COURT: All right. The Court will accept the plea of guilty.

"MR. LYONS (assistant prosecuting attorney): I would like to withdraw the Habitual Criminal Information in view of the change of plea. It has been filed this date, and proceed on the original Information. THE COURT: All right. The Court will grant leave.

"MR. LYONS: In addition to your attorney your father is here in court also, is he not, Mr. Gunther? THE DEFENDANT: Yes, sir, he is. MR. LYONS: Your father's name is what? THE DEFENDANT: Paul Gunther. MR. LYONS: You have conversed and advised your son in this matter? MR. PAUL GUNTHER: Yes, I have.

"MR. LYONS: Do you want a brief statement of the facts, Your Honor? THE COURT: Yes.

"MR. LYONS: On the 3d day of January of this year, 1965, this defendant entered into the Heart of America Chicken in a Box at 3228 Indiana. There were two employees there, Annabelle Woodard and another lady, in addition to a number of customers. He walked to the back of the store where the manager, Miss Woodard, was, and had his left hand in his pocket and told her that this was a stick-up and that if she played it cool and didn't do anything she wouldn't be hurt, and pointed with his right hand to his left hand in his pocket indicating he had a gun; that she obeyed his wishes and the other employee also was there and was told the same thing. The cash register was opened and currency in the approximate amount of $160 was taken from the cash register in the presence of the manager, Annabelle Woodard. He then left the place of business and got into a 1962 Ford Falcon with Missouri license number YJ8–107, which later turned out this belonged to his sister-in-law.

"The defendant was arrested the next day and was identified in showup by both of the witnesses, the victim and other witness.

"He has, Your Honor, prior felony convictions as indicated by the filing of the Habitual Criminal Act in addition to the ones stated thereon.

"In 1953 he was sentenced for the Dyer Act until he was twenty-one years of age; in 1957 he was sentenced to one to five years for grand larceny; in 1958 he was given five years for Robbery First Degree out of this county on a plea of guilty, and in 1962 he was given two years for damaging state property; in 1963, one to five years for grand larceny.

"Since the defendant, Your Honor, is saving the Court the expense of the trial and saving the county the expense of such, the State will recommend eight years on his plea of guilty.

"Now, Mr. Gunther, you understand the Court is not bound by my recommendation? THE DEFENDANT: I understand.

"MR. LYONS: Your attorney or father has not told you this. The Judge may give you more or less than what I recommend, you understand that? THE DEFENDANT: Yes, sir.

"THE COURT: Mr. Konomos? MR. KONOMOS: No questions. I wish you would give him credit for his jail time, Your Honor.

"THE COURT: Mr. Gunther, you have entered this plea of guilty. Do you have any legal cause to show why sentence and

judgment should not be passed on you at this time? THE DEFENDANT: No, sir, I don't. THE COURT: Do you want to make any statement to the Court before I sentence you? THE DEFENDANT: No, sir.

"THE COURT: How long has he been in jail? THE SHERIFF: January 4, 1965. THE COURT: All right. Mr. Gunther, it is the judgment and sentence of this Court that you are sentenced to eight years in the custody of the Missouri Department of Corrections; your sentence to commence as of January 4, 1965."

At the hearing on his motion appellant testified that Mr. Konomos saw him twice while in jail; that he did not commit the charged robbery; that he asked Mr. Konomos to see his mother about certain witnesses who could testify to the "time element" and where he was at the time of the robbery; that he did not know whether Mr. Konomos pursued the request; that in a conference in the courtroom at the time of the plea Mr. Konomos said he would "see about getting me eight years, if he could"; that he said "that since I had this record and about the Habitual Criminal Act, I could get anywhere from eight to life on it. Quite naturally, I didn't want that." He said also that he pleaded guilty because he did not want to go to trial. His specific complaint against Mr. Konomos was stated: "I don't think Mr. Konomos seen the people whom I asked him to, to verify where I was at the time that this place was robbed, and by him telling me that this amount of time I could get, he said change my plea, so I had to change it. Q. Is there anything else you can add, any complaint you have against your lawyer at that time, Mr. Konomos? A. Just was ineffective."

Cross-examination elicited that he went to high school "maybe one and a half years"; that his family was available to him at the time of his plea and that his father was present and advised him; that they, as well as Mr. Konomos, could have made themselves available as well as his alibi witnesses had he stood jury trial; that he previously had pleaded guilty to armed robbery and received a sentence of five years, at which time he had counsel hired by his family; that the court told him at the present sentencing that he could get more or less time than the state recommended; that no one made any threats or promises; that he understood his right to stand trial; that he understood all the proceedings.

Michael D. Konomos testified that he had been practicing law since 1922 and had experience as an assistant prosecuting attorney and in defense. "My practice is ninety-five per cent criminal." He had handled two hundred fifty robbery cases alone and was informed on the law of robbery. He talked to the defendant the day the plea was entered, to his father, and to the defendant in jail several times. " * * * he intimated to me we should make some effort to get witnesses, and I stopped him, I said, 'I want to know this: Are you guilty or not guilty? You have to tell me the truth.' He told me he was, that he had been released from the penitentiary 30, 40, or 50 days before." He did not mention any witnesses. "He wanted me to see what I could do. 'I don't want to stand trial.' He seemed to know the ropes, as we call it, about what might happen, and I talked to him at length. I asked him, and he asked me questions and I gave him the answers." He discussed the matter with the assistant prosecuting attorney and then told defendant, " 'I don't know if the State is going to drop the Habitual or not. I want you to think it over,' and he said, 'I know all about it, Mr. Konomos, get the Habitual dropped. I don't want to go to trial.' " They discussed the plea, the willingness of the prosecuting attorney to recommend an 8-year sentence, and the minimum and maximum sentences of five years to death. The same information was related to the father. On the day of the plea he wanted to plead guilty. The defendant never expressed any dissatisfaction with the services of Mr.

Konomos until the current motion and testimony.

Appellant's motion also charges that "at no time before sentencing did this Judge ask this defendant if his plea of guilty was voluntarily made, nor did the Judge ask defendant if he had any good or 'legal reason to give why Judgment and Sentence should not be pronounced at this time.'" The partial transcript previously set out shows that no threats or promises were made to induce appellant to plead guilty; that the court did specifically ask defendant for "any legal cause to show why sentence and judgment should not be passed," and that the defendant had no such reason. In addition, at the hearing on the motion the latter charge was abandoned.

The court continued the hearing to September 30, 1966, to permit Mr. Hill to arrange for the testimony of the father and any other witnesses desired. On September 30, 1966, appellant stated that his mother had twice reported his father to have been in "town," but the father had not contacted him.

The court denied appellant's motion, finding, among other things, that defendant was granted allocution; that the guilty plea was not the result of any coercion by the prosecuting attorney or the "Habitual Criminal Act"; that the plea was voluntarily made after consultation with appellant's privately employed counsel and father; that appellant understood the nature of the proceedings; that there is no present showing of witnesses to establish alibi; that appellant's privately employed counsel effectively represented him; that appellant admitted his guilt in open court; and that justice would not be served by setting aside the plea and sentence.

■ Under this evidence and these circumstances it cannot be said that appellant has sustained his burden of proving ineffective assistance of counsel. State v. Washington, Mo., 399 S.W.2d 109, 112[7]. There is no evidence of coercion, misrepresenta-

tion or mistake; the plea was voluntarily made; it appears that appellant's counsel, Mr. Konomos, had been practicing over forty years with emphasis on criminal cases and with particular experience in robbery cases. There is no evidence that Mr. Konomos did not do all that any attorney could have done in advising appellant, in protecting his rights and in securing justice for him, and his contention that he was ineffectively represented was properly denied on this record. See State v. Riley, Mo., 394 S.W.2d 360, 363[3]; State v. Macon, Mo., 403 S.W.2d 630, 632[3]; State v. Worley, Mo., 371 S.W.2d 221, 224[7].

■ Appellant also charges that the complaint of robbery, first degree, against him was void because it was not made by the person robbed; that the warrant issued pursuant to such a complaint was therefore void, and that the warrant reciting only the charge of "Robbery, First Degree" failed to advise him of the nature of the accusation. It is unnecessary to determine whether either the complaint or warrant was defective because such alleged defects went only to the validity of the arrest and not to defendant's guilt or innocence of the offense charged. Such are preliminary matters which are waived by failure to make timely objection and proceeding to trial. State v. Ninemires, Mo., 306 S.W.2d 527, 529[4]; State v. Herron, Mo., 376 S.W.2d 192, 193[2]. In this case, the plea of guilty to the charge of robbery, first degree, previously demonstrated to have been voluntarily entered, waived any defects in the original complaint and warrant.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.