Bitz RICHARDSON, Appellant,

v.

STATE of Missouri, Respondent.

No. 56242.

Supreme Court of Missouri,
Division No. 1.

Sept. 13, 1971.

Louis J. Pelofsky, Joseph N. Miniace, Joel Pelofsky, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Gene E. Voigts, First Asst. Atty. Gen., Jefferson City, for respondent.

HOUSER, Commissioner.

Appeal by Bitz Richardson from an order overruling a motion filed under Criminal Rule 27.26, V.A.M.R., to vacate a first degree murder conviction and life sentence entered in the Circuit Court of Henry County December 30, 1958.

This is the eighth time appellant has applied to a court for relief from this judgment and sentence. On May 16, 1960 he filed a motion under Criminal Rule 27.26 to vacate; an evidentiary hearing was held before Honorable W. O. Jackson, Judge of the Circuit Court of Henry County; the motion was overruled and he appealed to the Supreme Court of Missouri, which affirmed the judgment in an opinion by Dalton, J., reference to which is made for the general factual background of this case. State v. Richardson, Mo.Sup., 347 S.W.2d 165. Certiorari was denied by the United States Supreme Court. 372 U.S. 954, 83 S.Ct. 953, 9 L.Ed.2d 978 (1963). On January 22, 1964 an evidentiary hearing of appellant's petition for a writ of habeas corpus was conducted before then United States District Judge Floyd R. Gibson, following which an opinion and order was filed denying the petition. Richardson v. Nash, U.S.D.C., W.D.Mo.W.Div., No. 14534–2. Appellant sought review by the United States Court of Appeals, which court found no probable cause for review of the district court's action. Richardson v. Nash, U.S.C.A., 8 Cir., Misc. No. 287, opinion filed August 31, 1964. In 1968 appellant filed a second petition for a writ of habeas corpus, this time in the United States District Court for the Western Division of Missouri, Central Division, alleging newly discovered evidence. Chief Judge William H. Becker on November 15, 1968 made an order dismissing the petition without prejudice, suggesting the filing of a new motion under our Criminal Rule 27.26 to secure state court adjudication of claims arising out of the allegedly newly discovered evidence. On April 23, 1969 appellant filed this, his second motion under Criminal Rule 27.26, alleging ineffective assistance of counsel; that movant did not make a knowing and voluntary waiver of his preliminary hearing and of defects in the information; coercion into entering a plea of guilty by the threat of a death penalty if he stood trial; and denial of allocution. An evidentiary hearing was held before Honorable Kelso Journey, Judge of

the Circuit Court of Henry County, at which appellant was represented by counsel. Findings of fact and conclusions of law were made and judgment overruling and denying the motion to vacate was entered. This appeal followed.

Appellant raises four points: ineffective assistance of counsel at and before the plea of guilty; uninformed and involuntary waiver of the preliminary hearing and of defects in the complaint and information; coercion of the plea of guilty by appellant's counsel intimidating appellant by repeatedly emphasizing the possibility of a death penalty if he stood trial, and failure of the sentencing court to observe the rules of the Supreme Court in taking the plea of guilty and sentencing appellant.

■■■ The specific findings of fact and conclusions of law made by the circuit court on each of these four points are presumed to be correct and should be affirmed unless clearly erroneous. Criminal Rule 27.26(j); State v. Mountjoy, Mo.Sup., 420 S.W.2d 316; Crosswhite v. State, Mo.Sup., 426 S.W.2d 67. A finding is clearly erroneous when the reviewing court is left with the definite and firm conviction that a mistake has been committed, and the burden of proving the grounds for relief is upon appellant. Crosswhite v. State, supra, 426 S.W.2d l. c. 70.

In determining this appeal we have the benefit of the transcripts of the hearings before Judges Journey, Gibson and Jackson, all of which were introduced in evidence. Our review of the three transcripts and other exhibits leaves us with the definite and firm conviction that no mistake has been committed; and that the findings and conclusions of Judge Journey are not erroneous but are supported by substantial testimony and are free of error.

■■■ Appellant claims his counsel failed to properly investigate the case and failed to advise him as to the elements of first degree murder, possible defenses, mitigation or avoidance of punishment, and the consequences of pleading guilty. Under the standards and tests by which courts appraise the effectiveness of assistance of counsel [1] there is ample evidence to sustain the finding that there was no failure to properly investigate the case or to advise appellant in these particulars. The evidence justifies the following findings of fact: Appellant's counsel made a creditable investigation. He ascertained the names of the State's witnesses Eversole and Havens and informed himself of the salient facts. He procured a tape recording of Eversole's testimony at the coroner's inquest. He read a statement by Havens at the prosecuting attorney's office. Appellant and one Gregg had a falling out over Gregg's failure to pay for some poles cut from appellant's property. Appellant had complained to the sheriff about the acts of Gregg. From the stories of Eversole and Havens counsel concluded that they would testify in court to the following account of the killing: Gregg was driving a truck, with Eversole and Havens in the seat with him. They were waylaid by appellant, who approached and shot Gregg three times with a pistol, while Gregg's hand was still on the steering wheel—none of the three got out of the truck. Gregg was shot with .22 calibre bullets. Appellant's son had registered a .22 pistol with the sheriff a few days previously. That gun was missing from the drawer where the son kept it at home. The gun was never found. Havens and Eversole both identified appellant in a lineup, and Haven's statement identified appellant as the man involved in the shooting. Counsel investigated in the nearby county where Gregg had lived, conferred with appellant's wife,

1. Jackson v. State, Mo.Sup., 465 S.W.2d 642; Gaitan v. State, Mo.Sup., 464 S.W.2d 33; State v. Caffey, Mo.Sup., 457 S.W.2d 657; Holbert v. State, Mo.Sup., 439 S.W.2d 507; State v. Dean, Mo.Sup., 400 S.W.2d 413; State v. Worley, Mo.Sup., 371 S.W.2d 221; Goodwin v. Swenson, W.D.Mo., 287 F.Supp. 166; Cardarella v. United States, 8 Cir., 375 F.2d 222, cert. den. 389 U.S. 882, 88 S.Ct. 129, 19 L.Ed.2d 176.

son and other relatives; interviewed the sheriff and his deputy, the chief of police, prosecuting attorney, the divorced wife of appellant, and others. He discussed the facts with appellant and counseled with him 28 times between September 19 and December 30, 1958. Together they reviewed the tape recording of the coroner's inquest. Counsel supplied appellant and his wife with a transcript of the recording. He advised appellant as to the nature of the crime charged and the range of punishment upon conviction and discussed with him possible defenses, including self-defense and temporary insanity. In testifying before Judge Gibson appellant claimed that Gregg waved him down on the highway and got out of his truck, accompanied by three other persons; that appellant was alone; that Gregg approached him with a gun, threatened him, and when appellant got out of his truck Gregg hit him in the mouth, raised the gun in a threatening position; appellant grabbed him by the wrist and in the scuffle, while appellant was defending himself, the gun accidentally discharged and killed Gregg. Counsel testified that appellant never told counsel "any story like that." He first told counsel "something about reaching for a gun (a gun never found) or reaching for a jack," but later when they were alone appellant told counsel the same facts recited by the prosecuting attorney to the court (from the statements of Eversole and Havens). Counsel considered a change of venue and the prospects in the counties to which the case might be sent on change of venue. He discussed with appellant his prior conviction of manslaughter, its admissibility in evidence and possible effect on the jury in the event of trial. He determined that appellant had no defense and that it would be a mistake for him to take the stand with this previous conviction. He told appellant, his wife, sons and the sister that appellant had "an awful good chance of getting the death penalty if he ever had a jury trial." He discussed the possibility of parole and advised appellant that it was impossible to say how long he would be imprisoned under a life sentence (contradicting appellant's testimony that counsel indicated that he would be out in not more than 8 months). He advised appellant to plead guilty and take life imprisonment. After long conferences between counsel, appellant and the relatives, and between appellant and his kinsmen in private without counsel present, appellant and his relatives agreed that he would plead guilty with the expectation of receiving a life sentence. Counsel prepared and had both appellant and his relatives sign a paper agreeing to such a disposition of the case. Although the prosecuting attorney at first would not recommend less than the death penalty, even on a plea, finally, after further talks with counsel, he·promised to recommend a life sentence on a plea of guilty. Counsel had experienced in the past the circuit judge not accepting the prosecuting attorney's recommendations and therefore in chambers, in the presence of the prosecuting attorney, counsel asked the judge whether he would follow the recommendation of the prosecuting attorney.

In this state of the record we conclude that the finding of Judge Journey that counsel "made a very complete and credible investigation of all the facts concerning the charge, * * * gave much study and consideration of all the aspects of the State's case against his client and of the possible defenses," including the defenses of self-defense and temporary insanity; "did investigate and consider every facet of the case" and that counsel's obtaining the recommendation of the prosecuting attorney of a life sentence "was a very effective representation by an attorney for which Movant should be commendatory rather than to admonish," is not clearly erroneous.

▮ Complaint is made that counsel waived the preliminary hearing (done with the written consent of appellant); that appellant, a layman, was incapable of evaluating whether to waive this right; that such a hearing would have been valuable

for discovery purposes. Appellant's counsel justified the waiver on the ground that there was no necessity of examining the State's witnesses at a preliminary hearing because he already knew what the State's witnesses would testify to from the testimony of Eversole at the coroner's hearing and from Haven's statement. While generally the strategy of defense counsel is to observe and not actively contest the preliminary hearing, "[s]ometimes the preliminary hearing is waived entirely without any suggestion of impropriety. Ineffective representation in this respect has not been demonstrated and it does not appear from the record." State v. Wilkinson, Mo.Sup., 423 S.W.2d 693, 698–699.

█ Appellant complains that counsel failed to attack the complaint as faulty for not bearing the endorsement of the names of the State's witnesses thereon, and that counsel failed to take advantage of Criminal Rule 23.06 by attacking the long delay in affording appellant a preliminary hearing. These are preliminary matters. Any defects in such matters are waived by failure to make timely objection and by proceeding to plead guilty. State v. Gunther, Mo.Sup., 415 S.W.2d 733[3], and cases cited, 1. c. 736. We have been over this ground before in State v. Richardson, supra, wherein it was ruled that "Any defects in the record attending the waiver of the preliminary hearing or of other proceedings in the magistrate court were waived when defendant, represented by counsel, appeared in the circuit court, announced ready and entered his plea of guilty to the charge of murder in the first degree stated in the information [citing cases]." 347 S.W.2d, 1. c. 169.

█ Appellant urges that counsel failed to keep in touch with the State's witnesses; that if he had been diligent in this respect he would have known that the State's key witness, Eversole, committed suicide six weeks before the day appellant pleaded guilty and that the State could not have made a submissible case without Eversole's testimony. Eversole lived in another county. Counsel did not take the papers printed

in that county and had no actual knowledge of Eversole's death until after the plea was entered. Apparently no others connected with the case had knowledge of the event. There is nothing to show bad faith on the part of counsel in not discovering the fact. "Counsel cannot be held to be ineffective in the constitutional sense for failing to act on facts [of] which he, in good faith, was not aware." Robinson v. State, Mo. Sup., 454 S.W.2d 930, 933. Counsel might have taken the unusual precaution of satisfying himself that the State's witnesses were still alive and available to testify against his client, immediately before presenting his client to the court to plead guilty, but perfect representation is not required in order to meet constitutional standards of effectiveness of counsel. State v. Caffey, Mo.Sup., 457 S.W.2d 657, 662 [7]. Appellant's counsel testified before Judge Gibson that if he had known of Eversole's death it would not have changed his recommendation to plead guilty and take a life term because the State still had available the witness Havens, who was in the truck with Eversole and the deceased at the time of the shooting, who had identified appellant at the lineup and whose statement was in the hands of the prosecuting attorney, and according to counsel there was yet a third witness. In denying the first petition for writ of habeas corpus Judge Gibson ruled that Richardson had not carried his burden of proof by showing that his counsel waived the preliminary hearing, that he did not learn of the death of witness Eversole until after the plea, and that he failed to object to the State's failure to endorse the names of the State's witnesses. On appeal the court of appeals stated that "there could hardly be room to argue that his attorney's lack of knowledge of the witness' death was of constitutional substance." We reach the same conclusions at which the federal district judge and court of appeals arrived on this issue.

█ Appellant's contention that counsel coerced and intimidated him into pleading guilty by emphasizing the possibility of the death penalty is without merit. Ap-

pellant argues that the only conclusion which can be drawn is that he agreed to enter his plea to escape the death penalty without realizing the true consequences of his act or that he might have presentable defenses which would enable him to escape or mitigate his punishment. Appellant does not suggest any defense that he could have presented or that facts exist to support a defense. He does not contend that he is innocent and that given a new trial he may be vindicated. He asserts only that he has not been convicted in constitutional form. As far as the charge of intimidation is concerned, if it was counsel's considered opinion that appellant stood in danger of receiving the death penalty it was counsel's duty to so advise appellant and impress that fact upon his mind. A guilty plea is not invalid under the Fifth Amendment because it is motivated by the prisoner's desire to accept the lesser penalty of life imprisonment rather than go before a jury and face the possibility of the higher penalty authorized by law for the crime charged. Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747; Parker v. North Carolina, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785. The dilemma confronting a person charged with first degree murder (whether to plead guilty in the expectation that he would receive a life sentence or stand trial and risk possible imposition of the death penalty) "does not amount to coercion of the sort which means that his plea of guilty is coerced and subject to collateral attack." Fleck v. State, Mo. Sup., 443 S.W.2d 100, 103, and cases cited.

Under approved standards and tests Judge Journey's finding that appellant was not denied his constitutionally protected right to the assistance of counsel is not clearly erroneous.

■ Appellant contends that the sentencing court failed to observe the requirement of Criminal Rule 25.04 that the court not accept the plea without first determining that the plea is made voluntarily with understanding of the nature of the charge. The record shows that the court asked appellant whether he understood that he was charged with murder; whether he understood the charge; whether he had discussed the matter with his attorney; whether he understood what he was doing, and whether he understood the range of punishment; that "it's either life imprisonment or death." Appellant, accompanied by his counsel, answered all of these questions in the affirmative and pleaded guilty. Now appellant again urges that his knowledge of the elements of the crime was not elicited; that the court failed to determine whether the plea was improperly induced by the prosecuting attorney, whether appellant understood the penalties involved, the possible defenses, what circumstances might mitigate the crime and the alternatives.

The findings of Judge Journey on this issue ("that Movant's plea of guilty was voluntarily and understandingly made by Movant") are presumed to be correct and should be affirmed unless clearly erroneous. Mountjoy and Crosswhite, supra. On the first appeal to this Court Dalton, J. wrote that "[t]he record wholly fails to support the contention that the court erred in accepting the plea of guilty," and "wholly fails to establish that defendant's plea of guilty was entered by reason of 'fraud, apprehension, fear, persuasion, and * * misrepresentation,' or that defendant's constitutional rights were violated." State v. Richardson, supra, 347 S.W.2d, l. c. 170, 173. There is no credible evidence in the subsequent transcripts compelling any different conclusion. Because of several discrepancies in appellant's testimony his veracity has been questioned and self-serving testimony given by him has been rejected as untrue. State v. Richardson, supra, 347 S.W.2d l. c. 173. Judge Gibson stated that he was convinced that appellant "understood his situation and that his plea of guilty was made voluntarily." The court of appeals found no basis of probable cause to review the findings of the district court on this issue, and found "significance in the situation of the credibility evaluation involved." Judge Journey commented on the fact that appellant "told his at-

torney varying stories of self-defense and then abandoned his self-defense story altogether." From the whole record we now make the fifth finding upholding the plea of guilty as having been made voluntarily with understanding of the nature of the charge, and declare Judge Journey's finding in this respect not clearly erroneous.

Finally, complaint is made that allocution was not granted as required by Criminal Rule 27.09. The right to allocution applies only after conviction upon a trial by jury and does not apply to a sentence pronounced on a plea of guilty. State v. McClanahan, Mo.Sup., 418 S.W.2d 71; State v. Ashworth, 346 Mo. 869, 143 S.W.2d 279, 284, and authorities cited; State v. Kitchin, Mo.Sup., 300 S.W.2d 420, 425, cert. den. Kitchin v. Missouri, 354 U.S. 914, 77 S.Ct. 1299, 1 L.Ed.2d 1429.

Judgment affirmed.

WELBORN and HIGGINS, C.C., concur.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.